**UNITED STATES of America, Appellee,**

v.

**John Gregory LAMBROS, Appellant.**

**Nos. 76–1580, 76–1581.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1976.

Decided Nov. 16, 1976.

---

Peter J. Thompson, Minneapolis, Minn., for appellant.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., Minneapolis, Minn., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This is an appeal by defendant Lambros from final judgment convicting him on pleas of guilty on the charges hereinafter described, the resulting sentence, and the denial of his motion for leave to withdraw guilty pleas made by him.

No. 76–1580 is the prosecution based on a multiple count indictment against the defendant and numerous other persons charging an extensive conspiracy to import cocaine and distribute it in Minnesota. Lambros entered a plea of guilty to Count 43 charging possession of two pounds of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

No. 76–1581 is an indictment charging assault with a deadly weapon upon United States Marshals at the time of defendant's arrest on the drug charge.

On April 22, 1976, after three days of trial of multiple defendants before a jury in case No. 76–1580, and after other defendants at the trial had entered guilty pleas, the record reflects the following proceedings:

MR. WALBRAN: [Assistant United States Attorney.] Your honor, on yesterday morning, on this, our fourth day of trial, and what would be our third day of evidence taken in the cocaine conspiracy case 3–75–128, we have arrived at a satisfactory disposition of the case. It is the intention of the defendant John T. Lambros to enter a change of plea in the case number 128 as to Count 43 of the indictment. That would be a tender of a negotiated plea, Your Honor, under which the defendant would receive no more than five years incarceration and a special parole term of whatever length the Court determines, but at least three years.

Your Honor, the defendant as part of the negotiation will also this morning tender to the Court a change of plea to Count I of that other indictment in 3–76–17 pertaining to an assault and resistance against certain Deputy U. S. Marshals and narcotics officers. That is a non-ne-

gotiated plea. That is, the offense carries a maximum penalty of ten years and $10,000 and Mr. Lambros will simply enter a plea of guilty.

It is our understanding and our negotiation that the two sentences to be imposed would be served concurrently. It is further our assurance, Mr. Lambros, that we will not pursue any cocaine-related charges against his wife Christina. This is a matter which concerns him and we are satisfied the ends of justice have already been served in her case.

It is also part of the negotiations that the United States Attorney will not pursue a potential or latent charge arising from Mr. Lambros' possession of three electronics devices which seem to be bugging devices and which the FBI has been investigating for us. We will not pursue those charges now.

Have I correctly stated the negotiations, Mr. Thompson?

MR. THOMPSON: [Defendant's attorney.] Yes.

MR. WALBRAN: Mr. Lambros, have I correctly stated it?

DEFENDANT LAMBROS: Yes, you have.

MR. WALBRAN: Do you understand it?

DEFENDANT LAMBROS: Yes, I do.

THE COURT: You want to plead guilty to Count 43 in the major 128 case and you want to plead guilty to the indictment in 3–76–17?

DEFENDANT LAMBROS: Yes, Your Honor.

Thereafter the prosecuting attorney, at the court's request and in the presence of the defendant and his attorney, explained defendant's constitutional rights in detail and the penalties involved in the pending charges, and questioned defendant with respect to his knowledge and understanding of such rights, and the voluntariness of his guilty pleas. Thereafter the court personally addressed and interrogated the defendant as follows:

THE COURT: Did you give true answers?

DEFENDANT LAMBROS: Yes, Your Honor, I did.

THE COURT: To all these questions, they were all truthful?

DEFENDANT LAMBROS: Yes, sir.

THE COURT: Do you want to plead guilty to this count?

DEFENDANT LAMBROS: Yes, Your Honor, I do.

THE COURT: You are guilty?

DEFENDANT LAMBROS: Yes, Your Honor, I am.

THE COURT: Do you have any questions you want to ask about it?

DEFENDANT LAMBROS: No, Your Honor.

THE COURT: You fully understand everything that is going on?

DEFENDANT LAMBROS: Yes, Your Honor.

THE COURT: Have you had enough time to visit with your lawyer about pleading guilty to this count?

DEFENDANT LAMBROS: Yes, I have, Your Honor.

THE COURT: Then I will accept the guilty plea as to Count 43 with the understanding that I will read the probation report, and if I think the limitation of time that you have negotiated is appropriate I will accept it, and you have negotiated for a maximum of five years plus a special parole term of unlimited duration; and it's also understood, I understand, that you plead guilty to the assault count, the assault indictment in 3–76–17.

It's also understood that the United States Attorney will not prosecute your wife for some possible offense and that there will be no other drug-related prosecutions on behalf of the government. Is that the full understanding that you have?

DEFENDANT LAMBROS: Yes.

Defendant's constitutional rights and the consequences of his guilty plea were also explained in connection with the assault

charge. The question of accepting the defendant's guilty plea on the assault charge was taken up immediately following the Rule 11 hearing on the drug charge.

Time for sentencing was fixed for June 21, 1976. On the morning of that day and before sentencing, defendant filed a motion for leave to withdraw his guilty plea in each of the two cases based upon two grounds, to wit: (1) Defendant's arrest on June 17, 1976, on a new drug charge materially changed defendant's position and violated the express and implied terms of the plea bargain and nullified the plea bargain agreement. (2) While defendant was advised as to certain consequences of his guilty plea in accordance with Rule 11(c), he was not apprised that the consequence could also expose him to substantially longer terms of imprisonment for subsequent convictions under the Federal Narcotics Act.

The court denied the motion and subsequently, on July 29, filed a memorandum explaining its reasons for so doing.

On June 21, 1976, Lambros was sentenced to ten years imprisonment on the assault charge and to a concurrent sentence of five years on the drug charge, plus a fine of $10,000, and a three-year special parole term. Immediately thereafter, on motion of the United States Attorney, all other counts of the indictment were dismissed. We find nothing in the record which reflects in any way a failure of the Government to carry out its plea bargain obligation with respect to not prosecuting defendant's wife, or in any other respect.

■ Defendant seeks a reversal upon the broad ground, supported by various contentions hereinafter set out and discussed, that the court abused its discretion in denying his presentence motion for leave to withdraw his plea of guilty. We find no abuse of discretion and affirm the conviction.

The standard for review of motions to withdraw a guilty plea before sentence is somewhat more lenient than that applying to such motions filed after sentencing.

■ Presentence motions are to be judged on a "fair and just" standard. *United States v. Bradin*, 535 F.2d 1039, 1040 (8th Cir. 1976). A good discussion of the fair and just standard is found in *United States v. Barker*, 168 U.S.App.D.C. 312, 514 F.2d 208, 220–222 (1975). In *United States v. Benson*, 469 F.2d 222, 223 (8th Cir. 1972), we stated:

In *United States v. Woosley*, 440 F.2d 1280 at 1281 (CA8 1971) we said: "Rule 11 proceedings are not an exercise in futility. The plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same." We are abundantly satisfied that the trial court's denial of appellant's motion to withdraw his plea of guilty was not an abuse of discretion. *United States v. Rawlins*, 440 F.2d 1043, 1045–1046 (CA8 1971).

Defendant's contention that the Government breached its plea bargain agreement is wholly without merit. Defendant's June 17 arrest, which occurred nearly two months after his guilty plea, is based on a drug offense alleged to have been committed on June 17, 1976. There is no support for defendant's claim that an investigation of defendant for narcotics offenses was in operation at the time of the guilty plea or that the Government had any knowledge at the time of the guilty plea that the defendant was continuing to operate an illegal drug business.

Defendant also challenges the sufficiency of the court's personal participation in the Rule 11 proceedings. He concedes that appropriate questions and information were sought by the Government attorney and points to no way in which he was misled or prejudiced by the Rule 11 proceedings. Before accepting the guilty plea, the court by personal, direct inquiries, heretofore set out in detail, ascertained that the defendant's responses to the Government attorney's questions were truthful, that he fully understood his rights and the consequences of his plea, that he had no question to ask, that he admitted that he had committed the

acts charged and that he was guilty of the offenses charged, and that he had a full opportunity to consult with his attorney with respect to his plea.

Defendant was an intelligent person and was represented by competent, self-employed counsel.

The court by its personal questioning on a sound basis in effect adopted the extensive record made by the prosecuting attorney. We hold that there has been substantial compliance with Rule 11, reserving for the moment the issue next discussed.

Defendant further contends that under certain circumstances punishment for a subsequent violation of the Federal Narcotics Act can be enhanced by reason of his prior conviction under the narcotics act, and that he was entitled to be informed of such consequences, and that he was not so informed. The trial court in its opinion held that such was a collateral consequence and not a direct consequence, and in support thereof, stated:

The cases cited by defendant do indicate that a defendant must be informed of certain legal consequences of his plea. Courts have used the label "direct" consequences to denote those which must be communicated and the label "collateral" consequences for those which need not. In *Weinstein v. United States*, 325 F.Supp. 597, 600 (C.D.Calif.1971), a case presenting a similar claim of involuntariness, the court stated:

Rather petitioner would have us hold that he must be told of all possible collateral consequences which might ensue from a plea of guilty or from a conviction, since the results collaterally in the future are the same. No authority is cited to support him.

It is true that the present sentence he is serving on a narcotics charge was enhanced because of this 1955 narcotics conviction on his plea of guilty, but we know of no ruling in this or any other Circuit that he should have been advised of this possibility before entering the original plea. We agree with the holding in *Fee

v. United States*, 207 F.Supp. 674, 676 (W.D.Va.1962):

To the best of my knowledge it has never been suggested that the court . . . is under any duty to warn of such a possible result. [They] have a right to assume that the defendant will not be guilty of a subsequent offense.

. . .

In *Cuthrell v. Director*, 475 F.2d 1364, 1366 (4th Cir. 1973), the court states and holds:

The law is clear that a valid plea of guilty requires that the defendant be made aware of all "the direct consequences of his plea." . . . By the same token, it is equally well settled that, before pleading, the defendant need not be advised of all collateral consequences of his plea, or, as one Court has phrased it, of all "possible ancillary or consequential results which are peculiar to the individual and which may flow from a conviction of a plea of guilty, * * * ." . .

The distinction between "direct" and "collateral" consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment. [Citations omitted.]

The trial court stated that it was not taking the subsequent charge into consideration in imposing sentence.

■ We agree that the possibility of enhanced punishment in a subsequent narcotics act violation is a collateral and not a direct consequence of the guilty plea, and hence that the court in the Rule 11 proceedings is not obligated to explain the collateral consequence.

In support of its exercise of discretion in denying the motion to withdraw the guilty plea, the court stated:

Defendant admits that an established ground for refusing to allow plea withdrawal is the possibility of prejudice to

the government. The defendant was part of a widespread drug distribution scheme. Many of the key witnesses were co-conspirators who wished to lessen their sentences. They have now pleaded guilty, been sentenced, and transferred to prison. The expense of assembling them for trial would be great and, more importantly, the incentive for them to testify with the possibility of sentence reduction foreclosed is small. When this prejudice is weighed against defendant's motivation for withdrawal, the merit of the motion is insubstantial. Defendant does not contend that he is innocent or that he has unearthed a valid defense. Rather he simply wants to put all of his criminal offenses in one basket. He can only do this at a great cost to the government. Therefore, withdrawal will not be allowed.

The record in the present case fully supports the trial court's determination. The record shows that three days of the prosecutor's time, the time of the witnesses, and the time of the court was consumed in the jury trial before the guilty plea was entered, and that considerable difficulty would be involved in assembling the many witnesses used by the Government in the multiple conspiracy charges, and in refreshing the recollections, and in obtaining many witnesses incarcerated in penal institutions.

We are convinced that the court did not abuse its discretion in denying leave to the defendant to withdraw his guilty plea to the two charges here involved.

Affirmed.