**UNITED STATES of America, Appellee,**

v.

**Raymond L. SCHARF, Appellant.**

**No. 77–1055.**

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1977.

Decided March 30, 1977.

Rehearing and Rehearing En Banc Denied April 19, 1977.

Barry A. Short, U. S. Atty., and Richard D. Billeaud, Asst. U. S. Atty., St. Louis, Mo., filed brief for appellee.

Before LAY, WEBSTER and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Raymond L. Scharf, hereinafter called defendant, appeals from an order of the United States District Court for the Eastern District of Missouri[1] denying without an evidentiary hearing a post-sentence motion for relief from a judgment of conviction following the defendant's plea of guilty to a charge of having conspired with one Bonnie Morley to violate 18 U.S.C. § 1951, commonly referred to as the Hobbs Act. The motion was filed pursuant to Fed.R. Crim.P. 32(d) which provides in part that where a sentence has been imposed following a plea of guilty, the court may for the purpose of correcting "manifest injustice" set aside the conviction and permit the defendant to withdraw his plea of guilty.

The indictment returned against the defendant in May, 1976 contained seven counts charging violations of Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961 *et seq.*, and of the Hobbs Anti-Extortion Act, 18 U.S.C. § 1951, obstruction of justice, 18 U.S.C. § 1503, possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d), unlawful carrying and use of an explosive in violation of 18 U.S.C. § 844(h), and unlawful use of an explosive in violation of 18 U.S.C. § 844(i).

Defendant, who was represented by capable counsel of his own choice, originally entered a plea of not guilty to all seven counts of the indictment. However, as a result of a plea bargain struck between defendant's attorney, Mr. Norman London of St. Louis, and Department of Justice Special Attorney Richard D. Billeaud, the member of the St. Louis "strike force" who was handling the case for the government, the defendant by leave of court withdrew

Jay Schwartz, Racine, Wis., filed brief for appellant.

1. The Honorable H. Kenneth Wangelin, United States District Judge.

his plea of not guilty to Count 3 of the indictment and pleaded guilty to that count.

The plea was entered on September 20, 1976, and on October 22, 1976 Judge Wangelin sentenced the defendant to imprisonment for a term of ten years. Thereafter, Counts 1, 2, 4, 5, 6 and 7 of the indictment were dismissed by the government in accordance with the plea bargain that has been mentioned.

In his motion to set aside his conviction on Count 3 and for leave to withdraw his plea of guilty, which motion was supported by defendant's affidavit, the defendant alleged that the district court had failed to comply in numerous respects with Fed.R. Crim.P. 11, as amended in 1975,[2] when that court permitted the defendant to withdraw his plea of not guilty to Count 3 and accepted his plea of guilty to that count; and defendant also alleged that the plea bargain between his attorney and government counsel had been breached in a material respect to be mentioned.

With respect to his claim of breach of plea bargain defendant requested an evidentiary hearing. That request was not granted, and the district court made no specific finding with respect to the defendant's claim of breach. The district court concluded that it had complied adequately with Rule 11, and that no manifest injustice would result from denial of defendant's motion.

■ The transcript of the proceedings that took place on September 20, 1976 reflects that in most respects the district court complied adequately with Rule 11. However, it failed to comply as fully as it might have with the portions of the Rule relating to the procedure to be followed where a plea of guilty is entered pursuant to a plea bargain. Specifically, we find that the district court failed to comply with the last sentence of Rule 11(d) and with certain requirements of Rule 11(e) which is entitled "Plea Agreement Procedure."[3] And we have concluded that the order of the district court denying defendant's Rule 32(d) motion must be reversed and the case remanded for further proceedings. We do not reach the question of whether the plea bargain between the government and defense counsel was in fact breached.[4]

Controlling facts in the case may be summarized as follows:

The defendant is a St. Louis business man who for a number of years has been engaged in the vending and pinball machine business. The vending machines dispense such items as cigarettes and candy. The machines are located in various retail establishments in and around St. Louis. The pinball machines can be used for gambling in violation of Missouri law.

The first count of the indictment charged that from about 1972 down to the date of the return of the indictment in May, 1976, the defendant had engaged in racketeering activities which subjected him to punishment under 18 U.S.C. § 1962. Had the defendant been convicted on Count 1, he would have been subject to a fine of not more than $25,000.00 or to imprisonment for not more than twenty years, or both, and, in addition, under the provisions of 18 U.S.C. § 1963(a) and (c) defendant's business property would have been subject to forfeiture at the instance of the Department of Justice. And when the indictment was returned, the district court entered an order restraining the defendant from disposing of his assets; the entry of that order was authorized by 18 U.S.C. § 1963(b).

---

**2.** *See* the Federal Rules of Criminal Procedure Amendments Act of 1975, P.L. 94–64, 89 Stat. 370.

**3.** Rule 11(e) has six subdivisions. The first five of them became effective on December 1, 1975; the sixth, which is not involved in this case, went into effect on August 1, 1975. P.L. 94–64, § 2.

**4.** There is no question that a breach of a plea bargain by the government, if established, may entitle a defendant who has pleaded guilty in reliance on the bargain to appropriate relief. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Minnesota Mining & Mfg. Co.,* —— F.2d —— (8th Cir. 1977).

The second and third counts set out the alleged Hobbs Act violations[5] and involved the conduct of the defendant in relation to a business competitor, Cigarette Vending Machine Co., Inc., the stock in which was owned by John Hofstetter.

The second count charged that on or about August 10, 1973 the defendant planted a bomb under an automobile belonging to Cigarette Vending Machine Co., Inc., while the vehicle was parked in front of Hofstetter's home, and detonated the bomb for the purpose of so frightening Hofstetter that he would go out of business. The third count charged that between about August 1 and August 15, 1973 the defendant and an unindicted coconspirator, Bonnie Morley, conspired to practice extortion upon defendant's competitor above identified.

A conviction of the defendant on either the second or the third count would have entailed a maximum punishment of a fine of not more than $10,000.00 or imprisonment for not more than twenty years, or both. It should be observed that § 1951 does not contain a criminal forfeiture provision comparable to that which appears in § 1963.

During at least part of the period covered by the indictment the defendant was having serious tax problems with the Internal Revenue Service. In connection with his tax difficulties the defendant was represented by St. Louis tax attorneys, and he had litigation pending in the Tax Court of the United States.

Very shortly after the indictment in the instant case was returned, the defendant was indicted in the district court on a number of felony charges of having wilfully failed to collect, account for and pay over to the government federal withholding taxes. 26 U.S.C. § 7202. That case was assigned to District Judge John K. Regan.

The tax case was tried to a jury, and on September 16, 1976 the defendant was found guilty in that case. Four days later the defendant entered his plea of guilty in this case.

On October 22, 1976 the defendant was sentenced in this case by Judge Wangelin to imprisonment for ten years with the stipulation that the sentence run concurrently with the sentence to be imposed by Judge Regan in the tax case, and Judge Regan in that case imposed a sentence of imprisonment for ten years. Execution of both sentences was stayed until January 17, 1977 in order to enable the defendant to get his affairs in order before going to prison.

Later on the same day, the Internal Revenue Service levied upon and seized assets of the defendant to satisfy his alleged tax liabilities, and efforts of his tax lawyers to obtain a release of the levy were not successful. Plaintiff's claim of breach of plea bargain is based on the fact that his assets were seized by the IRS after his plea of guilty in this case was entered.

When Count 1 of the indictment was dismissed, that automatically eliminated the possibility that defendant would forfeit his business assets under § 1963, and there is no question that dismissal of Count 1 was part of the plea bargain.

The defendant, however, has assumed and now maintains the position that the plea bargain went further than a mere dismissal of all counts of the indictment except Count 3, and that it included a promise

---

5. 18 U.S.C. § 1951(a) is as follows:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

Section 1951(b)(2) defines "extortion" as being the obtaining of property from another with his consent induced by wrongful use of force or threatened force, violence, or fear, or under color of official right. It was the theory of the government that Hofstetter's right to compete with the defendant lawfully in interstate commerce constituted "property" within the meaning of the statute.

that in exchange for his plea there would be no seizure of any of his property by any agency of the government, including the Internal Revenue Service.

The defendant in November, 1976 filed a motion in the district court for what amounted to specific performance of his version of the plea bargain. That motion was denied, and defendant appealed; the appeal was docketed here but was voluntarily dismissed by the defendant.

The motion with which we are concerned was filed on December 22, 1976. This was during the stay period allowed by Judges Wangelin and Regan, and when the motion was filed defendant was at large on bail.

On January 12, 1977 Judge Wangelin entered his order denying the motion, and on January 14, 1977 notice of appeal was filed.[6] Defendant has been permitted to remain free during the pendency of the appeal.[7]

Before discussing the question of whether the district court complied with those portions of Rule 11 which relate to bargained pleas, we deem it well to say that defendant does not contend that any representative of the government ever made him the promise that he postulates; as a matter of fact, he did not participate in the plea bargaining between his then lawyer, Mr. London, and government counsel, Mr. Billeaud. In his affidavit filed in support of the motion defendant stated in substance that Mr. London had told him that it was part of the bargain that his property would not be seized by "the government," that he did not believe that "the government" could or would seize his property, and that he plead-ed guilty solely because he thought that by doing so he could save his business for his family, and that he would not have entered his plea, if he had known or thought that his property would be seized.

In a counter affidavit Mr. Billeaud stated that he had no authority to control any action that the IRS might take in its collection process, and that he never represented to Mr. London or to anyone else that he could control the IRS or that he would undertake to do so or influence its actions.

Rule 11(d) requires a district court to ascertain that a proffered plea of guilty is voluntary before accepting the plea, and the last sentence of that subdivision of the rule is as follows: "The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney."

Rule 11(e) deals explicitly with "Plea Agreement Procedure," and we set out the first five subdivisions of it in full:

(e) Plea Agreement Procedure.

(1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

---

**6.** The defendant has also appealed from his conviction in the tax case. That appeal has been docketed as No. 76–1957, and we are advised that it is not ready for submission.

**7.** After the IRS seized the defendant's property, he employed other counsel who filed the post-sentence motions in the district court and who are representing defendant in connection with this appeal. On January 17, 1977, which was the day on which the stay period expired, counsel presented to a member of this court a motion under Fed.R.App.P. 9(b) for a further stay and for an order allowing defendant to remain on bail while the appeal was pending. The defendant was allowed to remain at liberty until such time as the matter could be considered by the entire administrative panel of the court. The panel entertained doubt as to whether Appellate Rule 9(b) is applicable to an appeal from an order denying a motion filed under Criminal Procedure Rule 32(d). However, since the defendant has never commenced serving either of the sentences imposed on him, the panel decided not to take any formal action on the Rule 9(b) motion but simply to expedite consideration of the appeal on the merits, which has been done. As far as we know, the defendant is still at liberty.

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

(2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. Thereupon the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

(3) Acceptance of a Plea Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) Time of Plea Agreement Procedure. Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

.     .     .     .     .

■ Rule 11(e) was designed to recognize the legal validity of bargained pleas, to regulate the plea bargaining process, and to eliminate at least some of the problems that have arisen and some of the abuses that have occurred in connection with the process. One of its purposes is to eliminate just the kind of post-conviction dispute that this case exemplifies. It is a salutary rule, and district courts are required to act in substantial compliance with it although, as in the case of other subdivisions of Rule 11, ritualistic compliance is not required.

The transcript of the proceedings that took place on September 20, 1976 is not long, and we reproduce it in full as an Appendix to this opinion.

From a consideration of the transcript it is evident, first, that the district court did not inquire whether the defendant's willingness to plead guilty resulted from plea bargaining negotiations; such an inquiry was required by the last sentence of Rule 11(d).

■ More important, however, was the failure of the district court to develop fully not only the existence of the plea bargain but also the terms of the bargain. Such developing is particularly important where, as here, the defendant has not participated in the bargaining process and in determining whether to enter a plea of guilty has relied on what his attorney has told him about the terms of the bargain. In such circumstances full disclosure of the results of the negotiations between counsel protects the defendant from the consequences of an improvident plea, and also protects counsel on both sides from later charges of falsehood, bad faith, incompetence, or unprofessional conduct.

If the procedure required by the rule had been followed in defendant's case, and if he had thereafter pleaded guilty, the controversy about the terms of the plea bargain might never have arisen. And in any event the defendant would have been in a poor position to contend in a post-conviction proceeding that the agreement contained terms that were not disclosed in open court.

■ It is unfortunate that the district court did not comply more fully than it did with Rule 11(d) and (e). It is settled in this

**1130**

circuit, however, that not every failure of a district court to comply with the Rule entails the setting aside of a conviction with leave to withdraw a plea of guilty. *See United States v. Lambros*, 544 F.2d 962 (8th Cir. 1976). *Cf. United States v. Ortiz*, 545 F.2d 1122 (8th Cir. 1976), and cases cited.

If we were convinced from the record before us that the bargain between Mr. London and Mr. Billeaud had involved nothing but a dismissal of Counts 1, 2, 4, 5, 6 and 7 in exchange for defendant's plea of guilty to Count 3, we would be most reluctant and perhaps unwilling to reverse the district court's action in denying defendant's Rule 32(d) motion simply because the district court did not ask the specific question required by the last sentence of Rule 11(d) or because it failed to bring into the record in express terms the fact that defendant was pleading guilty to Count 3 in consideration of the agreement of the government to dismiss the remaining counts of the indictment.

However, we cannot be so convinced from the record before us. Where a post-sentence motion for relief under Rule 32(d) presents an issue of fact, an adversary evidentiary hearing may be required to resolve the issue. *United States v. Battle*, 447 F.2d 950 (5th Cir. 1971); *Meyer v. United States*, 424 F.2d 1181 (8th Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 92, 27 L.Ed.2d 91 (1970); *United States v. Mainer*, 383 F.2d 444 (3d Cir. 1966); 2 Wright, Federal Practice & Procedure, Criminal, § 539, p. 477.

Had an evidentiary hearing been held in this case, the defendant and Mr. Billeaud could both have testified and would have been subject to cross-examination. Moreover, Mr. London could have been called to the stand. No such hearing was held and neither side brought into the record any statement or affidavit of Mr. London. While it may be doubted that the defendant was told or believed that if he would plead guilty to Count 3 his plea would relieve his property not only from forfeiture under § 1963 but also from seizure by the Internal Revenue Service, we cannot say positively

that he was not so told or that he did not so believe.

Such being the case, we conclude that the order of the district court must be reversed and the cause remanded with directions to the district court to hold an evidentiary hearing, to determine what the terms of the plea bargain were and whether the bargain was breached, and whether manifest injustice will result if the conviction based on the guilty plea is permitted to stand.

The question of whether the defendant should be allowed to remain on bail while the case is pending on remand is one that we remit to the discretion of the district court.

Reversed and remanded for further proceedings not inconsistent with this opinion.

APPENDIX

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA, PLAINTIFF, vs. RAYMOND L. SCHARF, DEFENDANT.

No. 76–141 CR (3)

St. Louis, Missouri
September 20, 1976

TRANSCRIPT OF GUILTY PLEA

The following proceedings were had on the date set forth herein before the HON. H. KENNETH WANGELIN, United States District Judge, presiding in Court No. 3 of the Eastern Division of the Eastern District of Missouri, United States Court House & Customs House, 1114 Market Street, St. Louis, Missouri, with the defendant present in person.

APPEARANCES:

Mr. Richard Billeaud, Special Attorney, U. S. Department of Justice, Organized Crime Strike Force, for the Government;

Mr. Norman London, for the defendant.

CERTIFICATE

I hereby certify that pages 1 through 9 herein contain a true and accurate transcript of my original stenotype notes taken

at the place above set forth on September 20, 1976.

s/ Richard L. Saunders
Richard L. Saunders
Official Court Reporter
Court No. 3

THE COURT: 76–141 CR (3), United States of America versus Raymond L. Scharf.

MR. BILLEAUD: Your Honor, this case is set for trial this morning. However, I understand that Mr. London, Mr. Scharf's attorney, may have an announcement to the Court relative to a possible plea.

THE COURT: Let the record show that the defendant is here before the Court together with his counsel, Mr. Norman London, and Mr. Billeaud's here for the United States.

What do you say, Mr. London?

MR. LONDON: Court please, defendant has advised me of his desire to change his plea from not guilty to guilty with respect to Count 3 of the Indictment.

THE COURT: Have the defendant sworn.

[The defendant was placed under oath by the Clerk of the Court.]

THE COURT: In the event plea is made to Count 3 and is accepted by the Court, what's the Government's position as to the other six counts in this Indictment?

MR. BILLEAUD: Those counts, we would request the Court dismiss, Your Honor.

THE COURT: For what reason?

MR. BILLEAUD: In the interest of justice.

THE COURT: Total of seven counts, is that right?

MR. BILLEAUD: That's correct, Your Honor.

THE COURT: Before we proceed further, Mr. Scharf, the reason I had you sworn is to let you know that even though the Government may move the Court to dismiss the other counts; namely, 1, 2, 4, 5, 6 and 7, that the final analysis on wither or not they are dismissed and the final judgment on that matter is up to this Court, you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I would advise you further at this time, and I'm not trying to get you to change your plea or not change your plea but I will advise you at this time that in event I refuse to allow the dismissal of the other counts, I will allow you to withdraw any plea you make here today, you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In view of the fact that I must elicit certain information from you concerning the counts involved, you are further advised that any statement you make today concerning this matter cannot be used against you in a trial of this matter except for perjury. In other words, if you should lie to me here today, that would be perjury and/or it might be perjury and you might be prosecuted for that, but other than that the statement you make here today cannot be used against you in connection with the trial for this particular count. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: You have received a copy of the Indictment, have you?

THE DEFENDANT: Yes, sir.

THE COURT: How do you feel physically today, sir?

THE DEFENDANT: Pretty good.

THE COURT: Is there any question in your mind as to his physical and mental condition, Mr. London?

MR. LONDON: No, Your Honor.

THE COURT: Are you ready to plead?

THE DEFENDANT: Yes, sir.

THE COURT: What is your plea as to Count 3?

THE DEFENDANT: Guilty.

THE COURT: Is there any question, Mr. London, that your client is acting voluntarily?

MR. LONDON: No, sir.

THE COURT: Does he understand his right to trial?

MR. LONDON: He does, Your Honor.

THE COURT: Case is set for trial today, Mr. Scharf, I have a jury waiting. I would advise you at this time that I cannot accept your plea unless under the facts and the law it indicates guilt, and, further, that you understand your rights.

You have a right to trial by a jury, the verdict of the jury must be unanimous. The Government would have to confront you with the witnesses upon whose testimony it relies to obtain a conviction. You will be presumed to be innocent until proven guilty beyond a reasonable doubt. You can call your own witnesses. You have the right to compulsory process.

I'm sure Mr. London, who is a learned trial counsel, has advised you of your rights to trial, is that correct, sir?

THE DEFENDANT: He has, sir.

THE COURT: Do you further understand that if the Court accepts the plea of guilty as to Count 3 that the punishment can range up to a maximum of a fine of not more than $10,000 or twenty years imprisonment or both, do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Have any threats or promises been made to get you to plea guilty?

THE DEFENDANT: None whatsoever.

THE COURT: Do you believe there is any understanding or any prediction as to what sentence you would receive?

THE DEFENDANT: No, sir.

THE COURT: Count 3 charges that on or about the 1st day of August of '73 and continuing thereafter until about the 15th day of August of '73 that here in the City of St. Louis you and a person named Bonnie Morley, who is named as a co-conspirator but not as a defendant, and each with the other, to obstruct, delay and affect commerce.

Now, I understand the business you are in is that of operating vending machines, is that correct, sir?

THE DEFENDANT: That is correct.

THE COURT: Are those shipped to you from outside the State of Missouri?

THE DEFENDANT: Some are, sir.

THE COURT: I also understand that these vending machines in a considerable part involve the vending of cigarettes, is that correct?

THE DEFENDANT: That is correct.

THE COURT: And are these cigarettes received by you from out of the State of Missouri?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, you know that both as to some of the vending machines and as to the cigarettes, that they are in interstate commerce immediately prior to being received by you, is that right, sir?

THE DEFENDANT: That is correct.

THE COURT: Now, what was the name of your business?

THE DEFENDANT: Ray Scharf Coin Machines Incorporated.

THE COURT: And who operates the Cigarette Vending Machine Company Incorporated?

THE DEFENDANT: Fellow by the name of Hofstetter, Mr. Hofstetter.

THE COURT: You and he were in competition?

THE DEFENDANT: Yes, sir.

THE COURT: I'll ask you if you or to your knowledge and consent—well, let me ask you if you at any time during this period of time from August the 1st of '73 to August the 15th threatened Mr. Hofstetter you say his name is?

MR. BILLEAUD: That's correct, Your Honor.

THE COURT: Hofstetter, ever threatened him with force and violence and threatened him unless and until he would cease to compete freely with you? In other

words, did you threaten him to get him to either get out of business or cease competition, that's the question?

THE DEFENDANT: This other person and I did, yes, sir.

THE COURT: And you're speaking—by the "other person" you're talking about Bonnie Morley?

THE DEFENDANT: Yes, sir.

THE COURT: You were aware of her activity in the matter?

THE DEFENDANT: Yes, sir.

THE COURT: And you consented to it?

THE DEFENDANT: Yes, sir.

THE COURT: Any additional questions from the Government?

MR. BILLEAUD: No, Your Honor.

THE COURT: Mr. London, do you know of any reason why your client should not plead guilty?

MR. LONDON: No, sir.

THE COURT: You have discussed this matter with him at some length, I take it?

MR. LONDON: At great length, Your Honor.

THE COURT: And you have discussed with him the elements of the allegations of Count 3, is that right, sir?

MR. LONDON: I have, sir.

THE COURT: Let the record show that the plea is accepted; I find it is knowledgeable, voluntary and has a basis in fact, it contains all the elements of the crime and is, therefore, accepted.

I want a pre-sentence report. Sentencing will be on October the 15th. The pre-sentence report will be available on the Thursday prior to that time, and is the defendant on bond?

MR. LONDON: He is, Your Honor.

THE COURT: He may continue on his present bond.

MR. LONDON: The Court please, I believe, for the record, Mr. Billeaud has an announcement with regard to the restraining order issued by this Court in pursuance to Count 1 of this Indictment.

MR. BILLEAUD: Yes, Your Honor, this Court signed a restraining order on the day of the Indictment, May 27th, restraining Mr. Scharf from disposing of any of the assets of the corporation. That was pursuant to Count 1 of the Indictment. As the Government explained, we would request, at the time of sentencing, that that count be dismissed. I would request at this time that the restraining order be lifted as to Mr. Scharf.

THE COURT: Will you need a memorandum?

MR. LONDON: I think at the time of sentencing we will have one, but I think the record can just show you're dissolving the restraining order at this time, Your Honor.

THE COURT: Let the record show that under date of 27 May 1976 filed the same day, the Court ordered the restraining order prayed for and the motion is granted, that order is set aside at this time.

MR. LONDON: Thank you, Your Honor.

MR. BILLEAUD: Thank you, Your Honor.