UNITED STATES of America, Appellee,

v.

MISSOURI VALLEY CONSTRUCTION CO., Appellant.

No. 82–1307.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1982.

Decided April 12, 1983.

---

Robert V. Allen, Richard J. Braun, Attys., Dept. of Justice, Chicago, Ill., William F. Baxter, Asst. Atty. Gen., Barry Grossman, Stephen F. Ross, Attys., Dept. of Justice, Washington, D.C., for appellee, U.S.

J. Clifford Gunter, III, Michael Kuhn, Bracewell & Patterson, Houston, Tex., for appellant, Missouri Valley Const. Co.

Before HEANEY, JOHN R. GIBSON, Circuit Judges, and DUMBAULD,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

The significant issue before us is whether the district court erred in failing to advise

---

* The Honorable Edward Dumbauld, Senior District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

the representative of defendant Missouri Valley Construction Company that it was not entitled to withdraw a guilty plea, based on a recommendation of sentence under Fed.R.Crim.P. 11(e)(1)(B). The corporate defendant, in entering its guilty plea, was told that the recommendation was not binding on the court but was not advised that the plea could not be withdrawn, as required by Fed.R.Crim.P. 11(e)(2). We hold that the district court erred and reverse and remand for further proceedings.

On December 23, 1981, the United States and Missouri Valley entered into a pre-indictment plea agreement. Missouri Valley, a subsidiary of Peter Kiewit Sons', Inc., agreed to plead guilty to a two-count indictment alleging violations of section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). In return, the Government agreed not to prosecute several Kiewit companies or employees for bid rigging in Nebraska, Oklahoma, and Kansas (with a named exception) and further agreed to recommend to the district court a fine of $1,000,000 in accordance with Fed.R.Crim.P. 11(e)(1)(B). The agreement stated that the Government's recommendation was not binding on the sentencing judge and that conviction under the two-count indictment could result in a maximum fine of $2,000,000.

On January 14, 1982, Missouri Valley was indicted on two counts alleging that Missouri Valley had conspired with other contractors to rig bids and allocate highway construction contracts, in violation of the Sherman Act, 15 U.S.C. § 1 (1976). On the same date, Missouri Valley entered a plea of guilty to the two-count indictment. Before accepting appellant's plea of guilty, the district court questioned the company's representative, Mr. Thoendel, concerning the existence and nature of the plea agreement. The following colloquy occurred:

THE COURT: You understand, do you not, Mr. Thoendel, ... that this plea agreement calls upon the United States Attorney to make certain recommenda-

tions and you realize that those recommendations are only recommendations and that while I will listen carefully to them and give them full consideration that they are not binding upon me, that is to say, I need not accept them? You understand that?

MR. THOENDEL: Yes, Your Honor.

THE COURT: Let me explain that more carefully because I use the word accept and I shall explain that. I mean that the plea agreement calls for there to be recommendations to me. But you realize that I may or may not give to the corporation some sentence which is different from the recommendation?

MR. THOENDEL: Yes, Your Honor.

THE COURT: And I do that upon the basis of my own thinking and it may not match their recommendation.

MR. THOENDEL: Yes, Your Honor.

THE COURT: All right, sir. Very well. In that tone, then, I will accept the plea of guilty on behalf of the corporation as to Counts I and II.

On February 19, 1982, the district court rejected the sentencing recommendation of the Government, and fined Missouri Valley $1,000,000 on each count, a total of $2,000,-000.

Missouri Valley's meritorious contention raised in its reply brief is that the district court did not comply with the requirements in Fed.R.Crim.P. 11(e)(2) when it accepted the guilty plea, in that it did not advise defendant that if the recommendation for sentencing were not accepted, the defendant would have no right to withdraw the plea.[1]

■ There is no dispute that the plea agreement here is of the type specified in Fed.R.Crim.P. 11(e)(1)(B). Under the type (B) agreement, a prosecutor promises only to make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that

---

1. Missouri Valley also contends (1) that the district court failed to comply with Fed.R. Crim.P. 11(e)(4) by not affording it an opportunity to withdraw its plea, and (2) that the

district court abused its discretion in assessing the maximum fine under the Sherman Act, 15 U.S.C. § 1 (1976).

such recommendation or request shall not be binding upon the court. It is distinguishable from other types of plea agreements in that an agreement to recommend or not to oppose is discharged when the prosecutor performs as he agreed to do. Advisory Committee Note to Fed.R.Crim.P. 11(e)(2). By contrast, the remaining types of plea agreements specified in rule 11(e)(1), types (A) and (C), provide for a particular disposition, whether it be charge dismissal or an agreed-to sentence. The distinction is significant because in a type (B) plea agreement neither the acceptance provisions of rule 11(e)(3) nor the rejection provisions of rule 11(e)(4) are applicable.[2] Advisory Committee Note to Fed.R.Crim.P. 11(e)(2). Thus, if a district court imposes a sentence different from that recommended in a type (B) agreement, under rule 11 it need not offer the defendant an opportunity to withdraw his plea.[3]

■ To ensure that defendants would fully understand the nature of a type (B) agreement, an amendment was added to rule 11(e)(2), effective August 1, 1979. The amendment provides that "If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant

nevertheless has no right to withdraw his plea".[4] The rationale for the amendment is summarized in the Advisory Committee Note as follows:

Because a type (B) agreement is distinguishable from the others in that it involves only a recommendation or request not binding upon the court, it is important that the defendant be aware that this is the nature of the agreement into which he has entered. The procedure contemplated by the last sentence of amended subdivision (e)(2) will establish for the record that there is such awareness.

■ The established rule in this circuit is that district courts are required to act in substantial compliance with the dictates of rule 11, although "ritualistic" compliance is not required. *See United States v. Scharf,* 551 F.2d 1124, 1129 (8th Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 70, 54 L.Ed.2d 81 (1977); *United States v. Lambros,* 544 F.2d 962, 966 (8th Cir.1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). If a district court, in accepting a guilty plea, fails to comply substantially with rule 11 requirements, the guilty plea should be set aside and the defendant allowed to plead anew. *See United States v. Riegelsperger,* 646 F.2d 1235, 1237 (8th Cir.1981); *United*

---

**2.** Appellant's contention with respect to the district court's alleged violation of Fed.R. Crim.P. 11(e)(4) is thus rejected.

**3.** Nor is there any constitutional requirement that a district court permit a defendant to withdraw a guilty plea when that court decides after the hearing not to accept a recommendation for sentencing. *Cf. Lindner v. Wyrick,* 644 F.2d 724, 728 (8th Cir.) (when defendant is aware that plea is not in exchange for particular sentence but hopes state trial court will follow sentence recommendation, defendant not misled so as to undermine voluntariness of plea if court rejects sentence recommendation), *cert. denied,* 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981).

**4.** The full text of amended rule 11(e)(2) provides as follows:

(2) *Notice of Such Agreement.* If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is

of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.

Prior to the 1979 amendment, rule 11(e)(2) read as follows:

(2) *Notice of Such Agreement.* If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. Thereupon the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

*States v. Cammisano,* 599 F.2d 851, 855, 857 (8th Cir.1979).

▮ In this case, the district court went only half way in meeting the notice requirements of rule 11(e)(2). Although the court informed the defendant that the court was not required to accept the recommendation contained in the plea agreement, it failed to go further and to advise the defendant that if the court did not accept the recommendation, the defendant would have no right to withdraw the plea. Rule 11(e)(2) clearly, precisely, and unequivocally requires that "the court *shall* advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea" (emphasis added). The district court did not comply with this mandate.

The Government argues that the defendant has shown no prejudice because it was aware that it was entering into a type (B) agreement and thus knew the risks it was taking in making that agreement. The Government points to three factors in particular: the written plea agreement itself, which states that it is a type (B) agreement; the trial court's oral admonishments that it was not required to accept the sentence recommended in the plea agreement; and appellant's adequate representation by retained counsel. Under *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), we do not believe appellant is required to show prejudice to obtain relief on this direct appeal. *See id.* at 471, 89 S.Ct. at 1173 ("prejudice inheres in a failure to comply with Rule 11"). *See generally* 9 *Federal Procedure, Lawyers Edition* § 22:548, at 216 (1982). Even so, it is our view that the district court's failure to give the mandated warning resulted in evident prejudice to appellant.

Because of the failure to comply with the clear mandate of rule 11(e)(2), we reverse the conviction and remand with instructions that the defendant be given an opportunity to plead anew.[5]

DUMBAULD, Senior District Judge, dissenting:

In my opinion, the conclusion reached by the majority, although warrantably based upon the *language* of Rule 11(e)(2) F.R. Cr.P., exalts form over substance and defeats the *policy* of that rule. It also contravenes the wise policy that criminal procedure should be as free as possible from unnecessary complexities, since the greater the number of artificial niceties that must be scrupulously heeded with punctilious exactitude, the greater will be the volume of litigation unrelated to the guilt or innocence of the defendant.

The majority insists upon the ritualistic incantation of "talismanic phrases" such as the indispensable common law formula "warrantizando vendidit or barganizasset," which Justice Frankfurter scathingly denounced in *Yonkers v. I.C.C.,* 320 U.S. 685, 698, 64 S.Ct. 327, 334, 88 L.Ed. 400 (1944).

It must be confessed that to some extent the terms of Rule 11 itself transgress this sound policy. For example, the Rule provides that the sentencing judge must "personally address the defendant" and point out the rights which the defendant waives by entering a plea of guilty. Carried to its logical conclusion, this necessitates that the judge pronounce the defendant's name in the vocative case. Such a requirement is hardly essential, since the defendant is usually standing at the bar at the side of his attorney, and is personally aware of every word that is spoken, whether or not he is

---

**5.** We need not reach appellant's alternative argument that the district court abused its discretion in assessing the maximum fine under the Sherman Act, 15 U.S.C. § 1 (1976). We observe, however, that a sentence imposed by a district judge, if within statutory limits, is generally not subject to review. *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972); *United States v. Ross,* 666 F.2d 1163, 1165 (8th Cir.1981). We further observe that the district court gave careful consideration not only to the severity of the offense but also to arguments urged by appellant in mitigation. Finally, we note that the district court allowed the appellant to pay the fine over a five-year period so as not to bring appellant "to its knees," and that other Kiewit corporations were protected from antitrust prosecution for bid rigging.

specifically identified as the addressee of the court's inquiries. It is also questionable whether the prescribed procedure is more impressive or efficacious than the former practice where the prosecutor or the defendant's own attorney enunciated the "laundry list" of rights waived by entry of a plea of guilty, and the judge merely reinforced the enumeration by stressing some of the crucial points.

Whatever the means used, the basic and fundamental purpose of the Rule is to minimize frivolous post-conviction claims that the plea was not voluntary, by clearly placing on the record admissions by the defendant which preclude the assertion of such claims.[1] Any method of attaining this objective should be sufficient insofar as substance is concerned.

It is true that the majority's view finds support in *McCarthy v. U.S.*, 394 U.S. 459, 464, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969), where it is stated that "any noncompliance with Rule 11 is reversible error" and that the remedy for such violation (a remedy formulated in exercise of the Supreme Court's supervisory authority) is to permit withdrawal of the plea.

The McCarthy case is one of the less successful products of the "Warren Court"[2] and the Advisory Committee's Note points out the existence of "uncertainty as to the continued vitality and the reach of McCarthy."[3]

To eliminate the evil effects of *McCarthy* the committee proposed its new Rule 11(h), proclaiming that:

> Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

In further criticism of the *McCarthy* automatic reversal rule the Advisory Committee Note explains that:

> Though the *McCarthy* per se rule may have been justified at the time and in the circumstances which obtained when the plea in that case was taken, this is no longer the case. For one thing, it is important to recall that *McCarthy* dealt only with the much simpler pre-1975 version of Rule 11, which required only a brief procedure during which the chances of a minor, insignificant and inadvertent deviation were relatively slight. This means that the chances of a *truly* harmless error ... are much greater under Rule 11 than under the version before the Court in *McCarthy*. It also means that the more elaborate and lengthy procedures of present Rule 11, again as compared with the version applied in *McCarthy*, make it more apparent than ever that a guilty plea is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim," but rather " 'a grave and solemn act', which is 'accepted only with care and discernment.' " ... A plea of that character should not be overturned, even on direct appeal, when there has been a minor and technical violation of Rule 11 which amounts to harmless error.[4]

The complex character of Rule 11 in its present form is described by the Advisory Committee Note as follows:

> Prior to the amendments which took effect on Dec. 1, 1975, Rule 11 was very brief; it consisted of but four sentences. The 1975 amendment increased significantly the procedure which must be undertaken when a defendant tenders a plea of guilty or nolo contendere, but this

---

**1.** Advisory Committee Note to proposed Rule 11(h), in *Preliminary* Draft of *Proposed Amendments to the Federal Rule of Criminal Procedure,* October 1981, 25–30. The proposed Rule 11(h) was approved by the Judicial Conference of the United States at its September, 1982 meeting. 14 *The Third Branch* (No. 10, October 1982) 7.

**2.** The opinion is by the former Chief Justice himself.

**3.** *Op.Cit.* note 1, *supra,* at 26.

**4.** *Ibid.,* at 28–29. So too, this Court in *U.S. v. Lambros,* 544 F.2d 962, 965 (C.A.8, 1976) said: "Rule 11 proceedings are not an exercise in futility. The plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same."

change was warranted by the "two principal objectives" then identified in the Advisory Committee Note: (1) ensuring that the defendant has made an informed plea; and (2) ensuring that plea agreements are brought out into the open in court. An inevitable consequence of the 1975 amendments was some increase in the risk that a trial judge, in a particular case, might inadvertently deviate to some degree from the procedure which a very literal reading of Rule 11 would appear to require.

This being so, it became more apparent than ever that Rule 11 should not be given such a crabbed interpretation that ceremony was exalted over substance. As stated in *United States v. Scarf,* [sic] 551 F.2d 1124 (8th Cir.1977), concerning amended Rule 11: "It is a salutary rule, and district courts are required to act in substantial compliance with it although * * * ritualistic compliance is not required."

    *     *    *    *    *    *

Two important points logically flow from these sound observations. One concerns the matter of construing Rule 11: it is not to be read as requiring a litany or other ritual which can be carried out only by word-for-word adherence to a set "script." The other, specifically addressed in a new subdivion [sic] (h), is that even when it may be concluded Rule 11 has not been complied with in all respects, it does not inevitably follow that the defendant's plea of guilty or nolo contendere is invalid and subject to being overturned by any remedial device then available to the defendant.[5]

To my mind, the policy set forth in support of the proposed Rule 11(h) approved by the Judicial Conference is conclusive and convincing, and should control the decision of the case at bar.

That Rule 11 should be interpreted as requiring "substantial rather than ritualistic" compliance with its terms is the established rule in this Circuit. *U.S. v. Scharf,*

551 F.2d 1124, 1129–30 (C.A.8, 1977); *U.S. v. Lambros,* 544 F.2d 963, 966 (C.A.8, 1976). In the case at bar there is no doubt that the existence and terms of the plea bargain have been clearly recorded in writing, and that the government has fully performed its undertakings set forth in the agreement. For the defendant to be permitted to upset the agreement at this late date would be prejudicial to the government, especially in the light of the terms of the agreement relating to abandonment of prosecutions in other States than Nebraska. (See 544 F.2d at 967).

The substantial compliance test was recently applied with respect to waiver of jury trial under Rule 23 in *U.S. v. DeMichael,* 692 F.2d 1059, 1061 (C.A.7, 1982):

From the foregoing summary gleaned from the transcript, it seems clear that the defendant knowingly and intentionally waived his right to jury trial. The contention in this Court to the contrary is an obvious afterthought. He sat through and took part in steps specifically designed to eliminate the impending jury trial and empower the Court to dispose of the case on the basis of stipulated facts, preserving for appellate review the defenses upon which he really relied.....

It is true that we feel misgivings in the departure from the normal practice of requiring that jury trial be waived "in writing with the approval of the court and the consent of the government" in accordance with FRCrP 23(a). In substance and fact, however, there was a waiver in writing, signed by the defendant, and approved by the Court and the Government. It would be adhering to form over substance, in view of the circumstances of the case at bar, to insist upon an additional separate piece of paper and further colloquy.

We think it proper to emphasize, however, that the proper practice, which should uniformly be observed in the absence of unusual circumstances, is as stated in *U.S. v. Scott,* 583 F.2d 362, 364 (7th Cir.1978).

---

**5.** *Ibid.,* at 25–26.

The substantial performance standard should be applied in the case at bar.

The plea bargain itself discloses that it constitutes an "agreement in accordance with Rule 11(e)(1)(B)." Surely the subscribing corporation through its officers, experienced businessmen involved in antitrust law entanglements, and represented by able counsel, must have been familiar with the text of Rule 11 and the nature and characteristics of type (B) pleas. They knew what they were doing and did it knowingly and intentionally and voluntarily.[6]

The sophistication of the parties involved in this plea is shown by the fact that negotiations for the plea were undertaken *before any indictment was returned* and that in execution of the agreed-upon steps the plea was entered on the same day that the contemplated indictment was returned.

The agreement itself was a five-page written document, drafted with the complexity and care of a business contract or a piece of tax legislation.[7]

Moreover, the terms of the agreement were highly advantageous to defendant. The plea not only disposed of the pending litigation in its incipiency, but obligated the government not to prosecute any present or former Kiewit[8] employees or to seek their testimony without a grant of immunity, or to further prosecute Kiewit for antitrust violations in two other States besides Nebraska.[9] These advantages were obtained by the plea, and would not have been available if defendant had elected a jury trial.

Rule 11(e)(1)(B) describes a category of plea bargain which does not bind the Court and can be fully performed by the prosecutor by carrying out his promises, either to recommend a particular sentence or to refrain from opposing the defendant's recommendations to the Court. It differs in that respect from bargains under Rule 11(e)(1)(A) and Rule 11(e)(1)(C). (A) and (C)[10] pleas must either be "rubberstamped" (*i.e.,* accepted without change) by the Court [under Rule 11(e)(3)] or rejected [under Rule 11(e)(4)]. In case of rejection the defendant is free to withdraw the plea.

As was clearly stated in the plea itself in the case at bar, and as the court emphatically stressed at the time of sentence, the court was not bound, in this category (B) plea arrangement, to agree to the recommended sentence.

It is clearly the policy of Rule 11 that a type (B) plea cannot be withdrawn by the defendant, whether the Court accepts or rejects the recommendation made by the parties. Unfortunately, the draftsmen of the Rule, instead of stating that proposition clearly and categorically in a separate subsection, as was done to describe the consequences of acceptance or rejection of (A) and (C) pleas, left it to be inferred from the direction contained in the last sentence of Rule 11(e)(2) that the Court should remind the defendant "that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea."

The majority holds that because the sentencing judge neglected to deliver this "talismanic" reminder, the defendant shall be free to escape from its type (B) plea,[11] in

---

6. To ensure the voluntary nature of the plea and to manifest that nature indisputably on the record are the two main objectives of Rule 11. See note 1, *supra.*

7. The executed agreement in writing surely constitutes the definitive memorialization of the plea bargain in the record which forms the second objective of Rule 11. See note 6, *supra.*

8. This refers to the company of which defendant is a subsidiary, and all other subsidiaries in Kansas and Oklahoma, in addition to Nebraska.

9. In other States than Kansas, Oklahoma, and Nebraska the government reserved the right to prosecute Kiewit companies or employees.

10. This classification of pleas reminds one of the categories of reorganization under the Internal Revenue Code, 26 U.S.C. 368, of which practitioners discourse blithely as "B reorganizations" and the like. See Rabkin and Johnson, *Federal Income, Gift and Estate Taxation,* Vol. III, chapter 32, § 32.01 *et seq.*

11. Under the remedy fashioned by the Supreme Court under its supervisory power (394 U.S. at 464, 89 S.Ct. at 1169–70), withdrawal of the

the teeth of the clear policy of Rule 11 that type (B) pleas cannot be withdrawn.

Because of this square conflict between the majority's permission to plead anew and the policy of Rule 11 that (B) pleas cannot be withdrawn, I would interpret "shall" in Rule 11(e)(2) as directory rather than mandatory,[12] and conclude that the sentencing judge's failure to remind the defendant of this characteristic of its class (B) plea was harmless error, not affecting the defendant's substantial rights, and should be disregarded. Hence, the sentence as pronounced should stand. I therefore respectfully dissent.

plea is the appropriate remedy for any deviation from the procedures prescribed by Rule 11. In the case at bar, however, such a consequence clearly conflicts with the policy which characterizes a (B) plea as one which cannot be withdrawn because of rejection by the Court of the sentencing recommendation contained in the type (B) plea.

**12.** *Erhardt v. Schroeder,* 155 U.S. 124, 128–30, 15 S.Ct. 45, 46–47, 39 L.Ed. 94 (1894); Sutherland, *Statutes and Statutory Construction* (4th ed. Sands), Vol. 1A, § 25.03 and § 25.04. Particular portions of a legislative regulation should be interpreted in accordance with the general purpose and policy of the enactment. *N.L.R.B. v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957); *I.C.C. v. J–T. Transport Co.,* 368 U.S. 81, 114–15, 82 S.Ct. 204, 227–28, 7 L.Ed.2d 147 (1961).