**John W. BROWN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 50016.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 9, 1986.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Oct. 8, 1986.

Application to Transfer Denied
Nov. 18, 1986.

Lew Anthony Kollias, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Presiding Judge.

Appellant, John W. Brown, appeals the dismissal of his Rule 27.26 motion for post-conviction relief. After the filing of his pro se motion, counsel was appointed to represent appellant. An amended motion was filed. The state filed a motion to dismiss on the grounds that the allegation of appellant's motion were conclusively refuted by the record. The trial court, after oral argument of counsel, denied appellant's request for an evidentiary hearing, sustained the state's motion to dismiss and filed detailed findings of fact and conclusions of law. We affirm.

On March 8, 1982, appellant entered a plea of guilty to the charge of capital murder. During the plea proceedings the prosecutor was asked to disclose the state's evidence. He detailed a history of numerous threats made over a period of several weeks by appellant that he would kill the victim, an assault against her with a butcher knife a month before the killing and a kidnapping of the victim one week after the assault. On the morning of the murder, appellant purchased a shotgun, went to the victim's residence and shot her through a window. Entering the residence through the window shattered by the shotgun blast, he then shot her twice in the chest with a pistol. Appellant, when asked by the court if the prosecutor's statement was substantially correct, replied "the dates are wrong and some of it's right, you know, wrong, most of it's right." He produced a seven page handwritten statement which described, in detail, the events leading up to the shooting. Under oath he testified that he had written the statement freely and voluntarily. The court read portions of

that handwritten statement to the appellant, paragraph by paragraph. After each paragraph the appellant was asked if it was correct and each time he answered "yes." The discrepancies between the prosecutor's recitation and the appellant's handwritten statement are few and insignificant.

The court thoroughly questioned appellant regarding the voluntariness of his plea, his understanding of the proceedings, his knowledge of his constitutional rights, the effect a guilty plea would have upon those rights, his understanding of the sentence to be imposed, his mental state and his satisfaction with his attorney. A psychiatric report based on an examination of appellant the week preceding the guilty plea was before the trial judge. The report stated that appellant had no mental disease or defect within the meaning of § 552.010, RSMo. 1978. In the opinion of the psychiatrist, appellant was capable of understanding the proceedings and assisting in his own defense.

After the court was assured that the guilty plea had been freely and voluntarily made, appellant signed a petition to enter a plea of guilty. The court accepted the plea and, in accordance with a negotiated plea bargain whereby the state waived the death penalty, sentenced him to life imprisonment with no possibility of probation or parole for 50 years.

When granted allocution the appellant refused to make any statement. However, after the pronouncement of sentence, he stated:

> Everything I have given is a lie. I didn't plan to kill her, but I—sympathy I do not want to back out of it. I didn't plan to hurt her in any way. She is dead and I am the cause of it. I want you all to know that.

Appellant now seeks relief under Rule 27.26 contending his statement in which he claims to have lied shows his guilty plea was not knowing, voluntary and intelligent and alleging ineffective assistance of counsel because he was not informed of the defense of diminished capacity.

■ To qualify for an evidentiary hearing on a 27.26 motion, the movant must allege facts, as opposed to conclusions, warranting relief, such facts must raise matters not refuted by the files and records in the case and the matters complained of must have resulted in prejudice to the movant. *Haliburton v. State*, 546 S.W.2d 771, 773 (Mo.App.1977). The fact that appellant claimed to have lied at the conclusion of the guilty plea proceeding is not an indication that the plea was not knowingly and voluntarily made. "[I]t is not necessary that the movant admit to, or even believe, the veracity of the elements of the charges against him in order for his guilty plea to be valid." *Bird v. State*, 657 S.W.2d 315, 316 (Mo.App.1983). It is only necessary that the plea be knowing and voluntary. *Bird v. State, supra; Bradley v. State*, 494 S.W.2d 45, 48 (Mo.1973). As noted in the findings of the motion judge, appellant stated eight times under oath during the guilty plea proceedings that he was telling the truth. His seven page statement begins "I swear that this statement is the God's truth." To say that appellant's after-the-fact claim of lying is refuted by the record is an understatement. Moreover, the only conclusion to be drawn from his post-sentencing statement is that he was knowingly and voluntarily entering a plea of guilty.

■ With regard to his allegation of ineffective assistance of counsel, appellant acknowledges the rule that after a plea of guilty, a claim of inadequate representation bears only upon whether the plea was made voluntarily and knowingly. *Wade v. State*, 698 S.W.2d 621, 622 (Mo.App.1985). Appellant alleges that his trial counsel did not advise him of the defense of diminished capacity. Assuming that he would have us infer that this alleged failure affected the voluntariness of his plea, such a conclusion is totally refuted by the record. Under thorough and painstaking interrogation by the trial judge, appellant repeatedly stated that he wanted to plead guilty to the charge of capital murder, that he was fully

aware that he would be sentenced to life imprisonment without probation or parole for 50 years, that he had fully discussed the case with his attorney including "all defenses that you may or may not have to this charge" and was completely satisfied with his attorney's representation. Moreover, the transcript reveals that appellant's attorney advised the court he was of the opinion the state's evidence was not sufficient to substantiate a conviction of capital murder until appellant, deliberately and voluntarily, supplied additional details in his handwritten seven page statement which appellant sent to the judge.

Furthermore, appellant has not alleged any facts showing that the defense of diminished capacity was available to him. In first approving the diminished capacity or partial responsibility doctrine in Missouri, the Supreme Court, in *State v. Anderson*, 515 S.W.2d 534, 540 (Mo. banc 1974), adopted a definition set forth in *State v. Padilla*, 66 N.M. 289, 347 P.2d 312, 314 (1959), as follows:

> "The doctrine contended for by the defendant is sometimes referred to as that of 'diminished' or 'partial responsibility.' This is actually a misnomer, and the theory may not be given an exact name. However, it means the allowing of proof of mental derangement short of insanity as evidence of lack of deliberate or premeditated design. In other words, it contemplates full responsibility, not partial, but only for the crime actually committed."

Appellant's stalking of the victim for weeks, the premeditation and deliberation demonstrated by the facts surrounding the killing, and the absence of any positive findings in the psychiatric evaluation all tend to refute any suggestion of appellant's diminished mental capacity. Assuming the truth of his allegation that counsel failed to advise him of Missouri's recognition of such a doctrine, we agree with the conclusion of the motion court that any such failure did not render his plea involuntary and that he has failed to allege any facts showing that he was prejudiced thereby.

Appellant's reliance on *Stewart v. State*, 678 S.W.2d 439 (Mo.App.1984), is misplaced. In *Stewart*, this court held a 27.26 movant was entitled to an evidentiary hearing on the basis of his allegation that he had not been advised of his right to rely upon an insanity defense. This conclusion was expressly predicated upon the fact that one of the three psychiatric evaluations had concluded that Stewart was suffering from a mental disease or defect excluding responsibility for his acts. *Stewart* was carefully distinguished from *Patton v. State*, 486 S.W.2d 204 (Mo.1972) where the Supreme Court held there was no duty to advise a defendant of a possible "insanity defense" because a psychiatric evaluation had disclosed no mental disease or defect. *Stewart*, 678 S.W.2d at 441, citing *Patton*, 486 S.W.2d at 205. The facts of the instant case are identical with those in *Patton* and the Supreme Court decision is controlling.

The judgment is affirmed.

SMITH and SNYDER, JJ., concur.