**John BROWN, Appellant,**

v.

**Bill ARMONTROUT, Appellee.**

No. 89–1089.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1989.

Decided March 16, 1990.

Springfield Baldwin, St. Louis, Mo., for appellant.

Stephen D. Hawke, Jefferson City, Mo., for appellee.

Before BOWMAN, Circuit Judge, ROSS, and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

John Brown appeals from a judgment of the district court denying his habeas corpus petition filed pursuant to 28 U.S.C. § 2254. We affirm.

In March, 1982 Brown pleaded guilty to capital murder and was sentenced to life without the possibility of parole for fifty years. At the guilty plea hearing, Brown acknowledged the following. Brown and Paula Washburn had lived together for four years. After the relationship ended in March, 1981, Brown threatened to kill Washburn and informed her parents of his intentions. On March 20, 1981 he threatened her with a butcher knife, which resulted in assault charges, and on March 28 abducted her from Missouri to his mother's home in Illinois. On April 23, 1981 Brown again threatened to kill Washburn. On the morning of April 24, Brown went to Washburn's home and attempted to reconcile with her, but she refused. Brown indicated if he "couldn't have her, nobody could." He then purchased a shotgun and returned to Washburn's home. He loaded the shotgun and saw her through the front window. Through the window he shot her down, then entered the house through the shattered window. Brown found Washburn lying on the living room floor. According to his seven-page handwritten statement attached to his guilty plea and read in part at the hearing, "with [Washburn] crying and begging and pleading for her life," Brown picked up a pistol lying next to her and fired into her two more shots. Washburn died following surgery.

At the guilty plea hearing, Brown stated that he had no mental problems and that no

one had ever indicated to him that he suffered from a mental disease or defect. A few days before the hearing, a psychiatrist had examined Brown and found that he was not suffering from a mental disease or defect. Brown further stated that he fully understood the consequences of a guilty plea, that he "willfully, knowingly, premeditatedly, deliberately and unlawfully" killed Washburn, and that he was entering the guilty plea voluntarily. The court accepted the plea and provided Brown the opportunity for allocution, which he refused. After the court pronounced sentence, Brown commented off-the-record: "Everything I have given is a lie. I didn't plan to kill her, but ... I do not want to back out of it. I didn't plan to hurt her in any way. She is dead and I am the cause of it. I want you all to know that."

Brown then filed a Rule 27.26 motion,[1] alleging that his guilty plea was involuntary and that his counsel was ineffective for failing to advise him of a diminished capacity defense. The court denied relief. Brown appealed the denial to the Missouri Court of Appeals, which affirmed the denial. As to the voluntariness claim, the appellate court stated, "To say that appellant's after-the-fact claim of lying is refuted by the record is an understatement." *Brown v. State*, 719 S.W.2d 52, 54 (Mo.Ct. App.1986). As to his ineffective assistance claim, the court noted that a diminished capacity defense allowed evidence of a "mental derangement" to demonstrate lack of premeditation, but in this case the facts surrounding the killing and lack of positive findings in the psychiatric evaluation tended to negate any suggestion of diminished capacity. *Id.* at 54–55. The court further found that any failure to advise of the defense did not render Brown's plea involuntary and Brown had failed to allege any facts demonstrating prejudice. *Id.*

Brown then filed a Mo.R.Civ.P. 83.02[2] application to transfer to the Missouri Su-

---

1. Effective January 1, 1988, Rule 27.26 was repealed and replaced by Rule 29.15.

2. Rule 83.02 provides that an appellate court may transfer a case to the Missouri Supreme Court "because of the general interest or impor-

preme Court, alleging that the appellate court had misinterpreted the law regarding the diminished capacity defense. After the motion was denied, Brown filed a Rule 83.03 [3] application to transfer in the Missouri Supreme Court, alleging that the appellate opinion conflicted with decisions of the supreme court and another appellate court concerning the diminished capacity defense. The court denied the motion.

Brown then filed a petition for habeas corpus in federal district court. The court dismissed the petition for failure to exhaust the voluntariness claim. Brown appealed to this court. At the time of the appeal, the state conceded exhaustion was no longer an issue because the Missouri Supreme Court had declared the case closed, but argued that the voluntariness claim was procedurally barred because Brown had failed to include it in his application to transfer. By a divided panel, this court remanded the case to the district court to "ascertain whether, under state procedures, all matters were actually presented to the Missouri appellate courts." *Brown v. Armontrout*, 853 F.2d 624, 626 (8th Cir.1988). The majority noted but did not address Brown's arguments that a motion to transfer was unnecessary for exhaustion, and, in any event, under Missouri procedure all issues presented to the appellate court were before the supreme court. *Id.* at 625 n. 4. The majority instructed that if the district court found a procedural default, it must then determine whether "cause and prejudice" excused the bar. *Id.* at 626 n. 5. The dissent believed a remand was unnecessary because Brown's claims lacked merit. *Id.* at 626.

On remand, the district court found that Brown's failure to include the voluntariness claim in his application to transfer filed in the supreme court barred federal habeas review, and that Brown had not established cause and prejudice to excuse the bar. The court, however, went on to hold that both claims lacked merit. This appeal follows.

Brown again renews his argument that the voluntariness claim was exhausted because an application to transfer is not an available state remedy within the meaning of 28 U.S.C. § 2254(b) and (c), and asserts therefore that the claim cannot be barred. He relies on *Powell v. Wyrick*, 657 F.2d 222 (8th Cir.1981). In *Powell*, this court held that a Missouri prisoner need not file a Rule 84.08 out-of-time motion to transfer in order to exhaust available state remedies. The court explained that statutory exhaustion, 28 U.S.C. § 2254(b) and (c), codified the doctrine of comity, and that "[t]he doctrine of comity does not require exhaustion where such action would be futile or speculative at most." [4] *Id.* at 224. The court stated, "[h]owever, it is well settled that only after some clear manifestation on the record that a state court will refuse to entertain petitioner's claims will the exhaustion requirement be disregarded as futile." *Id.* In *Powell*, the State of Missouri had not referred the court to any case where the Missouri Supreme Court had granted an out-of-time motion, and the court's research indicated the motion was denied in practically all cases.

In this case, the record is undeveloped as to the number of times the Missouri Supreme Court has granted a criminal defendant's application to transfer.[5] Without

---

tance of a question involved in the case, or for the purpose of reexamining the existing law."

**3.** Rule 83.03 provides that the supreme court may transfer a case for any of the reasons set forth in Rule 83.02 or "for the reason that the opinion filed is contrary to a previous decision of an appellate court of this state."

**4.** *See also Castille v. Peoples*, —— U.S. ——, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) ("It would be inconsistent with the ... underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined, or permanently to

bar from federal habeas prisoners in States whose postconviction procedures are technically inexhaustible."); *Henderson v. Lockhart*, 864 F.2d 1447, 1450 (8th Cir.1989) (exhaustion not required where "the prospect for a meaningful appeal is a matter of conjecture").

**5.** In its brief, the state notes that in 1986 the Missouri Supreme Court granted 11% of all applications to transfer. We note that in *Fisher v. Trickey*, 656 F.Supp. 797 (W.D.Mo.1987), the State of Missouri argued that *Powell v. Wyrick*, 657 F.2d 222 (8th Cir.1981), was no longer good law, and submitted data in support of its con-

such information, we are presently unwilling to decide whether a Rule 83.03 application to transfer is necessary for exhaustion.[6]

 However, we do not believe another remand is warranted. At this time, "the interests of justice would be better served by addressing the merits of the habeas petition." *Granberry v. Greer*, 481 U.S. 129, 136, 107 S.Ct. 1671, 1676, 95 L.Ed.2d 119 (1987). Brown's claims that his plea was involuntary and that counsel was ineffective clearly lack merit.[7]

Here, there is absolutely overwhelming evidence that Brown's guilty plea was knowingly and voluntarily entered—he stated his guilt no less than eight times under oath, and wrote a seven-page statement to the same effect. Brown's second claim, that he should have been advised of the defense of diminished mental capacity, is equally well-refuted by the record. Brown's stalking of his victim for weeks, the premeditation and deliberation demonstrated by the facts surrounding the killing, and the absence of any positive findings in the psychiatric evaluation ... all refute any suggestion of Brown's diminished mental capacity. Assuming the truth of his allegation that his counsel failed to advise him of the availability of the diminished capacity defense, there simply are no facts showing that he was prejudiced thereby.

tention that an out-of-time motion to transfer was not futile. In reviewing the data, the district court noted it knew of no cases in which the Missouri Supreme Court had granted transfer of a criminal defendant's or habeas petitioner's application to transfer. 656 F.Supp. at 804. The court observed that the fact that the supreme court had granted the state's application to transfer a criminal case did "not support an argument that it is probable that the Supreme Court of Missouri will at some future time grant a defendant's application for transfer and thereafter grant the defendant the relief sought on direct appeal or on an appeal from the denial of Rule 27.26 relief." *Id.* The court provided the state an opportunity to submit supplemental data "to support a reasonable probability that a defendant may obtain the relief he seeks by filing of a Rule 84.08 motion." *Id.* The supplemental data, however, did "no more than elaborate the untenable view of the Attorney General that [the district] court ha[d] the power to either

*Brown v. Armontrout*, 853 F.2d at 626 (Magill, J., dissenting).

Accordingly, the judgment of the district court is affirmed.

disregard or to overrule" *Powell v. Wyrick. Id.* at 805.

6. We note that in *Williams v. Wainwright*, 452 F.2d 775, 776–77 (5th Cir.1971), the Fifth Circuit held that exhaustion did not require a Florida habeas petitioner to seek review of a claim in the Florida Supreme Court because the jurisdiction of the state supreme court was limited to resolution of conflicts with supreme court and other appellate decisions. *See also Smith v. White*, 719 F.2d 390, 391–92 (11th Cir.1983) (Alabama petitioner need not seek review in state supreme court because of limited jurisdiction of court).

7. We also find it unnecessary to decide Brown's alternative contention, that, assuming an application to transfer is necessary for exhaustion, under Missouri procedure all issues presented to the appellate court were before the supreme court.