**UNITED STATES of America, Appellee,**

v.

**Joseph CAMMISANO, Appellant.**

**No. 79–1002.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1979.

Decided June 1, 1979.

Robert G. Duncan of Duncan, Russell & Reardon, Kansas City, Mo., argued and on brief for appellant.

David B. B. Helfrey, Sp. Atty., U. S. Dept. of Labor (argued), Ronald S. Reed, Jr., U. S. Atty., Sheryle L. Randol, Sp. Atty., Kansas City, Mo., on brief for appellee.

Before LAY, ROSS and McMILLIAN, Circuit Judges.

LAY, Circuit Judge.

Joseph Cammisano and his brother, William Cammisano (Willie) were charged by indictment with extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. Although refusing to admit their guilt the two brothers entered guilty pleas in exchange for sentencing recommendations by the Government. Approximately two weeks after the pleas were entered Joseph Cammisano through his attorney moved to withdraw his plea. Following an evidentiary hearing the motion was denied and sentence was rendered according to the terms of the plea agreement. On appeal defendant asserts that the district court failed to comply with Fed.R.Crim.P. 11 when that court accepted his guilty plea. We agree and remand the cause for further proceedings.

The defendant claims he was pressured into pleading guilty because of threats that, unless he did so, his brother (Willie) might go to trial and receive a long sentence. On Friday evening, October 20, 1978, defendant learned that Willie had entered into a plea agreement calling for a sentence of five years. Defendant's attorney called him several times that evening to discuss plea agreements offered by the Government. Joseph rejected the agreements and eventually told his attorney not to call with any more offers. The next morning Willie and his attorney, along with Joseph's counsel, met with the judge assigned to the case. The attorneys advised the judge that Willie had agreed to enter a plea of guilty but that Joseph had not. Both attorneys testified the judge advised them that although he normally did not accept plea agreements, he might in this case because of the anticipated length of trial. Both attorneys also testified the judge expressed his reluctance to accept a plea from Willie alone since a trial for Joseph would still be necessary. The judge then advised counsel that he would make his decision the following Monday, the day trial was scheduled to commence.[1]

---

1. The district court's opinion reflects the accuracy of counsels' testimony:

[T]he Court met with the defense attorneys to discuss the possibilities of a guilty plea

The parties returned to counsel's office and sent for Joseph. Counsel then advised both defendants of the judge's remarks. Willie asked his attorney what sentence he might receive were he to be tried and found guilty, to which the attorney responded 10–20 years with no possibility of receiving a five year sentence. Although Joseph understood the judge's comments to mean that unless he pled guilty his brother would have to stand trial and risk the possibility of a long sentence, he nevertheless refused to change his plea.

Later that afternoon Joseph called his attorney and told him to enter a plea agreement because "his brother Willie said that he [defendant] was hurting him and that he, Joe, didn't want to hurt his brother and he didn't want to start a war between their families . . . ."

On Monday, October 23, 1978, the change in plea proceeding was held. After being advised of the existence of the plea agreements the court addressed both defendants, telling them that the plea agreement was not binding upon the court. After the Government outlined the terms of the plea agreements, the following colloquy occurred:

> THE COURT: All right. Now, under the law, I can not accept your plea of guilty in this case unless I have a factual basis for the plea of guilty. I have been told by the attorneys for the government and the attorneys for you two gentlemen

that you do not want to make a factual statement as to the elements of this offense. If [sic] that correct, Mr. Cammisano?

MR. WILLIAM CAMMISANO: That's right, sir.

THE COURT: Mr. Joe Cammisano, is that correct, you don't want to—ordinarily in a criminal case of this nature, before I accept the plea of guilty and under the rules laid down by the Supreme Court of the United States, I address the defendant personally and say, "Did you threaten Fred Bonadonna in some way in order to obtain his parking lot leases?"

Now, you don't have to answer that question but I'm asking you that question; Mr. Cammisano.

MR. WILLIAM CAMMISANO: I understand.

THE COURT: You don't want to answer that question

MR. WILLIAM CAMMISANO: No, your Honor.

THE COURT: —in connection with your plea of guilty.

And you do not, either, Mr. Joe Cammisano?

MR. JOSEPH CAMMISANO: I will not answer the question, sir.

The court then asked each defendant whether he was satisfied with his counsel's representation and each responded that he was.[2]

---

proceeding for William Cammisano. Attorneys for the government had been notified but were not present at the time these matters were discussed. The government was later informed as to the substance of the conversation. The Court informed the defense attorneys that it generally did not favor plea bargain arrangements and that since there would have to be a trial for Joseph Cammisano in any event, it would have to give the matter very careful consideration. The attorneys were informed that no decision would be made on this question until Monday, October 23—the date of the guilty plea proceedings.

2. Mr. Houdek, the attorney for Willie, stated at the hearing:

> MR. HOUDEK: Your Honor, with respect to this aspect of it, I would like to make a statement concerning my discussions with

the defendant and my advice to him, if that is satisfactory.

> THE COURT: Fine, proceed.

> MR. HOUDEK: Your Honor, as the Court knows, we have received from the United States all of the transcripts of testimony before the United States Grand Jury by witnesses that they intend to call in their case in chief as well as copies of interview reports concerning those witnesses. We have reviewed those completely, our clients and their families have also reviewed those transcripts and reports.

> We have discussed it among ourselves, Mr. Pelofsky and I and the defendants. We have advised them that based generally on the testimony of Fred Bonadonna and other witnesses that the government can make a strong submissible case under the charge in the indictment.

On the basis of the colloquies at the change in plea proceeding, see note 2, *supra,* the district court rejected defendant's Rule 11 challenge on the grounds that defendant had not demonstrated that his plea was involuntary. Relying on *United States v. Lambros,* 544 F.2d 962 (8th Cir. 1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1550 (1977), the court concluded that Joseph's decision to plead guilty was voluntary and not the result of force, threats or promises apart from the plea agreement. Finding defendant's plea proceeding lawful the court also rejected defendant's claim under Fed.R. Crim.P. 32(d), reasoning that, since defendant knew and understood what was being done at the change in plea proceeding and fully comprehended his rights and the consequences of his plea, there was no basis for holding that it would be "fair and just" to allow defendant to withdraw his plea.[3]

Fed.R.Crim.P. 11(d) provides:

The court shall not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty . . . results from prior discussions between the attorney for the

---

There are, however, a number of questions concerning that situation. We have discussed with them and advised them that Freddie Bonadonna and his testimony is, in some respects, impeachable by other witnesses. We have advised them that there is a legal question concerning the—whether or not the conduct charged in the indictment is covered by the Hobbs Act and we have also advised them that there is a legal question as to whether or not the exact conduct that the government intends to prove, that is the use of threats to influence Fred Bonadonna to use his influence to get Joseph Cammisano a liquor license, whether or not that is appropriately provable under the allegations of the indictment, and we have also discussed with them the government's contention and the authorities permitting the use of testimony of Fred Bonadonna to show that he was in fear and also—and his state of mind, the state of mind of the victim and the cases and the authorities that permit that to be admitted in evidence in an extortion case.

We have also discussed with them the admissibility of evidence of the defendants' reputations, alleged reputations for violence and we have discussed that with them. I have fully discussed it with my client and mentioned these aspects of the case to him.

I have also advised him that if the testimony of Fred Bonadonna were to be believed by the jury, that in all likelihood he would probably be convicted and found guilty.

I have further advised him that should the—he be convicted, that there is a substantial prospect that he would receive a greater sentence than the one recommended by the government as a part of this plea bargain.

And so it's our intention, based upon all of that information and in order to avoid the trial and notoriety and also to avoid the longer sentence, that—

THE COURT: The risk of a longer sentence.

MR. HOUDEK: Yes, the risk of a longer sentence, that we have determined to take this course of action and I have discussed this fully with my client and he has made this decision.

THE COURT: Mr. Cammisano, you have heard the statement that Mr. Houdek made. Do you concur fully in what he said?

MR. WILLIAM CAMMISANO: I sure do, your Honor.

Defendant's attorney then added:

MR. PELOFSKY: Your Honor, I might say that what Mr. Houdek has stated on the record applies equally to Defendant Joseph Cammisano. We have had those same discussions. Mr. Houdek and I have conferred extensively about the risks involved in the case.

I have conferred with my client extensively about the questions of law here and that the—what the potential risks are and further that it's my opinion that if he did go to trial and if he were convicted, that the risk of receiving a greater sentence than what have [sic] been agreed to in the plea bargain is substantial, and I believe that it is his decision to enter this plea.

The court then addressed defendant and asked whether defendant concurred with what his attorney said. Defendant responded: "Yes, sir, I confirm it."

**3.** Under Rule 32(d) presentence motions to withdraw guilty pleas are judged by the "fair and just" standard. *United States v. Lambros, supra.* Post-sentence motions to withdraw guilty pleas will be granted only to correct a manifest injustice. *United States v. Bradin,* 535 F.2d 1039, 1040 (8th Cir. 1976).

government and the defendant or his attorney.

Fed.R.Crim.P. 11(g) reads in part:

[I]f there is a plea of guilty . . . the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.

It is clear that ordinarily a guilty plea taken without full compliance with Rule 11 must be set aside. *McCarthy v. United States*, 394 U.S. 459, 463–64, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *United States v. Rawlins*, 440 F.2d 1043, 1046 (8th Cir. 1971); *United States v. Cody*, 438 F.2d 287, 289 (8th Cir. 1971). Ritualistic compliance with the dictates of Rule 11 is not required. *See, e. g., United States v. Lambros*, 544 F.2d 962, 966 (8th Cir. 1976), *cert. denied*, 430 U.S. 980, 97 S.Ct. 1550 (1977). The Rule does require, however, that the district court employ procedures sufficient to determine that the defendant understands the charges against him and the consequences of his plea and that defendant's plea is truly voluntary. *See United States v. Cody, supra.*

The record contains no specific inquiry by the court into the plea's voluntariness or whether it was the product of "force, threats or promises." The district court, however, ruled that defendant's statements expressing confidence in his attorney and adopting his attorney's remarks were sufficient to show compliance with Rule 11(d). The court stated:

In this case, the Court in effect adopted defendant's attorney's statement and defendant readily concurred in what had been said. This is sufficient to satisfy that provision of Rule 11(d) requiring that the Court address the defendant personally to ascertain whether the decision to plead guilty was the result of force, threats, or promises apart from the plea agreement. It is doubly sufficient in this case where Rule 11(e)'s procedures were carefully followed.

The court then summarized its holding:

[S]ince the record shows that defendant was fully aware of all of his rights and the consequences of his plea, he has not demonstrated that the plea was involuntary. By fully and completely complying with Rule 11(e) in the plea proceeding, the Court determined that the motivating factor in defendant's decision to plead guilty was to avoid the risk of a lengthy prison term by agreeing to the bargain stated in the plea agreement. The Court also determined that defendant's ". . . willingness to plead guilty . . . result[ed] from prior discussions . . ." between him and the government. Rule 11(d), Fed.R.Crim.P. *In making this determination, the Court necessarily determined that the decision was not the result of force, threats or promises apart from the agreement.*

(Emphasis added.)

We find this procedure falls short of the spirit and letter of Rule 11(d) and the Supreme Court's admonition in *McCarthy* under the peculiar facts of this case.

In *McCarthy* the trial judge did not address the defendant concerning his understanding of the charges. The Government conceded as much. Nevertheless the Government argued

that since petitioner stated his desire to plead guilty, and since he was informed of the consequences of his plea, the District Court "could properly *assume* that petitioner was entering that plea with a complete understanding of the charge against him."

394 U.S. at 464, 89 S.Ct. at 1170 (emphasis in the original).

The court rejected that argument, observing that it ignored the two purposes of Rule 11:

First, . . . it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is *truly voluntary.* Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination.

*Id.* at 465, 89 S.Ct. at 1170 (emphasis added).[4]

■■ The essential purpose behind Rule 11 is to seek judicial assurance that the plea is voluntary and not wrongfully induced by force, threats or promises. The necessity to make this assurance is all the more essential when the defendant enters a plea without admitting his guilt. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).[5] Procedural compliance with Rule 11(e) does not obviate full compliance with Rule 11(d).[6]

■ The Government urges that familial coercion is insufficient to render a plea involuntary. *Cf. United States v. Bartoli*, 572 F.2d 188, 189 (8th Cir.), *cert. denied*, 438 U.S. 905, 98 S.Ct. 3124, 57 L.Ed.2d 1148 (1978) (manifest injustice standard); *Wojtowicz v. United States*, 550 F.2d 786, 791–92 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2938, 53 L.Ed.2d 1071 (1977) (§ 2255). The record, however, demonstrates more than familial coercion. The district court indicated to counsel that it was reluctant to accept defendant's brother's plea without defendant also pleading guilty. This corroborates to some extent defendant's claim that he was induced by the court's statement into pleading guilty. *Cf. United States v. Werker*, 535 F.2d 198, 202 (2d Cir.), *cert. denied*, 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976) ("Regardless of the judge's objectivity, it is the defendant's perception of the judge that will determine whether the defendant will feel coerced to enter a plea.").[7] We find the combination

4. In setting forth these requirements the Supreme Court reasoned:

These two purposes have their genesis in the nature of a guilty plea. A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment. of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. 394 U.S. at 466, 89 S.Ct. at 1171.

*See also Brady v. United States*, 397 U.S. 742, 747 & n.4, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

5. In a state habeas corpus proceeding this court recently wrote:

In each case where the invalidity of a guilty plea is asserted the record must be examined to assure that the plea was made voluntarily and was not the product of coercion. The voluntariness of a guilty plea must be determined by considering the relevant circumstances surrounding it . . . . .

*Watkins v. Solem*, 571 F.2d 435, 437 (8th Cir. 1978).

6. The district court's reliance on *United States v. Lambros, supra*, is misplaced. There one of the defendant's challenges was to the sufficiency of the court's personal participation in the Rule 11 proceedings. The record showed that the appropriate inquiries were asked by the Government's attorney. Before accepting defendant's guilty plea ᴛhe court by personal inquiries determined that the defendant's responses to the Government attorney's questions were truthful and that he fully understood his rights and the consequences of his plea. We found substantial compliance with Rule 11 since "[t]he court by its personal questioning on a sound basis in effect adopted the extensive record made by the prosecuting attorney." 544 F.2d at 966.

Here the appropriate inquiries were never made. It is true that Joseph's counsel's remarks indicate that a motivating factor in defendant's decision to plead guilty was the risk of a longer sentence. Defense counsel also stated, "I believe that it is his [defendant's] decision to enter this plea." Defendant "confirmed" what his attorney said. Nevertheless the trial court did not discuss with defendant the possibility that his plea was not completely voluntary. *Cf. United States v. Cody*, 438 F.2d 287, 288 (8th Cir. 1971) ("Ascertaining that the lawyer has gone over the indictment with the defendant is not in itself sufficient. The trial court must inquire directly of the defendant . . . . .") Requiring such an inquiry is not ritualistic.

7. Here defendant's perception seems reasonable. Defendant's attorney testified:

Q. All right. Now, the Court did tell you, though, that it was then reluctant to say that it would accept a plea bargain arrangement with William Cammisano without disposing of the entire case, in other words, a similar type of agreement with Joe; isn't that correct?

A. That's my recollection. I was under the impression that the trial factor was a substantial factor in whether or not to accept a plea bargain in the matter.

of the trial court's noncompliance with Rule 11, the court's statements made to counsel before the defendant entered his plea and the evidence of familial coercion sufficiently establishes that it would have been "fair and just" to allow petitioner to withdraw before sentencing his plea of guilty under Fed.R.Crim.P. 32(d). *United States v. Bradin*, 535 F.2d 1039, 1040 (8th Cir. 1976); *United States v. Barker*, 168 U.S.App.D.C. 312, 514 F.2d 208, 220–222, *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975).

The judgment of conviction is vacated and the cause is remanded for further proceedings.

Q. And if Joe did not enter a plea, then there would have to be a trial on Joe?

A. Well, the Court tentatively indicated that.