Max **WEISBERG**, Appellee,

v.

**STATE OF MINNESOTA, Appellant.**

No. 93–1948.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1993.

Decided July 19, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 30, 1994.

Mark N. Lystig, St. Paul, MN, argued, for appellant.

Jack S. Nordby, Minneapolis, MN, argued, for appellee.

Before LOKEN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Max Weisberg filed a petition for a federal writ of habeas corpus attacking his Minnesota state-court conviction for engaging in sports bookmaking. He alleged that the criminal complaint failed to state the essential elements of the offense and that his guilty plea is invalid. The district court granted the petition, and the State has appealed. We conclude that Weisberg's 1989 guilty plea was valid and that his attack on the criminal complaint is foreclosed by his plea. We therefore reverse.

I.

In 1989, Weisberg and his brother, Solly Weisberg, were charged with engaging in sports bookmaking between November 13, 1988, and December 4, 1988, in violation of Minn.Stat. §§ 609.75, subd. 7; 609.03; & 609.05. On June 19, 1989, Weisberg pled guilty. The plea proceeding was uneventful, and its transcript is only 12 pages long. In

response to questions posed by his defense counsel, Weisberg testified that he had reviewed with his counsel and then signed a "petition to enter plea of guilty," that he understood he was giving up his right to a jury trial, that he chose to plead guilty because he was in fact guilty, and that he did so freely and voluntarily. In response to questions posed by the prosecutor, Weisberg articulately answered questions about his birthdate, address, education, relatives, and marital status. Weisberg also stated that he had not been treated for a "mental condition," that he understood the plea proceeding, and that he did not use drugs or alcohol. After Weisberg answered additional questions to establish a factual basis for the plea, the trial court accepted the plea and ordered a presentence investigation. (Appellant's App. at B37–B45.)

On September 28, 1989, the trial court commenced a sentencing hearing. The hearing began with a discussion of the presentence investigation report. Weisberg's counsel stated that, upon reading the presentence investigation report, he learned for the first time that Weisberg had a low IQ and that he had been deemed "feebleminded" in 1940. (*Id.* at B56–B57.) The trial court, in contrast, expressed concern about the report's showing of Weisberg's lack of contrition. The court said,

> The part that concerned me is the statement that he made that he had absolutely no intention of stopping his involvement in bookmaking and that he was willing to accept incarceration in the future should he be caught at it. Now, that bothered me.
>
> . . . .
>
> . . . . The clear feeling of this probation officer is that this defendant just doesn't feel that what he did was wrong. . . . But that doesn't meet the test of whether he knew it was wrong and [whether] he is willing to take the consequences.
>
> . . . . [I]t seems to me that . . . he is willing to take the consequences and he likes doing what he is doing. . . .

(*Id.* at B60, B63.) Relying on the information contained in the presentence investigation report, Weisberg moved to withdraw the plea. (*Id.* at 56–57.) The trial court addressed the motion and the issue of Weisberg's competence by saying,

> I am not prepared at this time to allow you to withdraw the plea on behalf of the defendant. The defendant was before me in this matter and entered a plea on June 19th, 1989. I have the transcript. I specifically recall his taking the stand and his being interrogated by his attorney. . . .
>
> . . . .
>
> It appeared to the Court that he was aware of what was going on and that he was communicating well with his attorney and that he did understand the nature of what was occurring at least on that date.
>
> However, in the event that you are asking for a continuance to bring new matters before the Court, I would be inclined to allow you to do that so that you could proceed on any basis that you want concerning bringing information before me.

(*Id.* at B58–B59.) Just prior to adjournment, Weisberg's counsel said, "I will arrange for the testing." (*Id.* at B66.)

On November 16, 1989, the trial court resumed the sentencing hearing. At the beginning of the hearing, the trial judge addressed Weisberg's counsel as follows:

> THE COURT: . . . [H]ave you had an opportunity to go over the P.S.I.?
>
> [WEISBERG'S COUNSEL]: I have, Your Honor.
>
> THE COURT: The last time we met, as I recall, you wanted some time to make some contacts with various people concerning your client.
>
> [WEISBERG'S COUNSEL]: Yes, that's correct; and the Court continued this matter at my request and again at the request of the County Attorney.
>
> THE COURT: Anything you want to tell the Court at this time prior to the time that I sentence this defendant?
>
> [WEISBERG'S COUNSEL]: Your Honor, I have read the presentence report and shared it with my client, and I have no substantial objections to that report. I think it's fairly accurate about Mr. Weisberg's background and his employment.

(*Id.* at B69–B70.) Weisberg did not submit any evidence in support of his motion to withdraw the guilty plea, nor did he argue the motion to the court, nor did the court expressly rule on his motion. The trial court imposed a suspended sentence of 15 months of imprisonment, 5 years of probation, and 100 hours of community service. Before adjourning, the trial court sternly warned Weisberg that it would impose a sentence of imprisonment if Weisberg violated the terms of his probation by engaging in bookmaking. Weisberg said he understood the court's warning. (*Id.* at B75–B77.) Weisberg did not appeal his conviction or sentence.

Six months later, in May 1990, Weisberg and his brother were again charged with engaging in sports bookmaking, this time for the period from March 3, 1990, to March 15, 1990. (*Id.* at B149–B151.) After trial, a jury found that the alleged conduct had been proved beyond a reasonable doubt but that Weisberg was not guilty due to a mental deficiency. (*Id.* at B22–B23.)

The State then sought to revoke Weisberg's existing probation. It alleged the same conduct that had been alleged in the second criminal complaint. Weisberg then moved to vacate his 1989 conviction and to withdraw his 1989 guilty plea, arguing that the complaint failed to state the essential elements of the offense and that his guilty plea was invalid due to a mental deficiency. In support of his motion, Weisberg submitted the jury's verdict in the second criminal action; a copy of a 1939 probate court judgment, which deemed Weisberg (who was then 15) "feebleminded because of inability to make normal progress in school," (Appellant's App. at B27); and a three-page letter from a psychologist addressed to Weisberg's counsel, which stated that the psychologist had examined Weisberg on October 15, 1990, (*id.* at B31–B33). Weisberg did not offer live testimony. The trial court denied Weisberg's motion to vacate the conviction and granted the State's motion to revoke probation. The court again imposed a suspended 15-month sentence, placed Weisberg on probation, and also ordered Weisberg to serve in the county jail three one-week periods coinciding with major sporting events. (*Id.* at B10–B11.) On appeal, the revocation of pro-

bation was reversed, but the denial of Weisberg's motion to vacate was affirmed. *See State v. Weisberg,* 473 N.W.2d 381 (Minn.Ct. App.1991).

In March 1992, Weisberg filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleged that the 1989 criminal complaint was defective and that his 1989 guilty plea was invalid. (Appellant's App. at A3–A8.) A magistrate judge filed a lengthy report and recommendation, concluding that relief should be granted on both grounds. A district judge overruled the State's objections and adopted the report and recommendation. The State appeals.

## II.

Either of the grounds relied on by the district court is sufficient to support its judgment. We first address the State's argument that Weisberg failed to prove that his guilty plea was invalid.

### A.

Weisberg alleged that his "guilty plea is invalid, involuntary and not intelligently made because of his mental deficiency, and because of his concern to save his innocent brother from prosecution." (Appellant's App. at A6.) A defendant's plea of guilty is valid if (1) the defendant is competent to stand trial and (2) the defendant makes a knowing and voluntary waiver of his constitutional rights. *Godinez v. Moran,* ―― U.S. ――, ――, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993).

#### 1.

Weisberg's argument focusses primarily on the first question, whether he was competent. An incompetent person has a due process right not to be convicted. *Griffin v. Lockhart,* 935 F.2d 926, 929 (8th Cir. 1991) (citing *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975), and *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966)). In addition, all criminal defendants have a due process right, in certain circumstances, to have their competence determined in an evi-

dentiary hearing. *Id.* (citing *Drope,* 420 U.S. at 180, 95 S.Ct. at 908; *Pate,* 383 U.S. at 378, 86 S.Ct. at 838). A denial of either of these rights may provide the basis for habeas relief. *See Griffin,* 935 F.2d at 930; *see also Sheley v. Singletary,* 955 F.2d 1434, 1438 (11th Cir.1992) (stating that incompetence to stand trial and failure to conduct *Drope* hearing may be alleged as distinct claims).

### a.

▉▉▉ We first consider whether Weisberg's guilty plea was invalid on the ground that the state trial court erred by failing to conduct a hearing to determine his competence. Trial courts are obligated, either on a defendant's motion or *sua sponte,* to conduct an evidentiary hearing if there is "sufficient doubt" about the defendant's competence. *United States v. Day,* 949 F.2d 973, 981 & n. 8 (8th Cir.1991), *on remand,* 998 F.2d 622, 627 (8th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2140, 128 L.Ed.2d 868 (1994). "Absent some contrary indication, state and federal trial judges are entitled to presume that defendants are competent." *Day,* 949 F.2d at 982. Whether the trial court was obligated to conduct a *Drope* hearing in this case "depends on whether [Weisberg's] mental competency was in question at the time he entered his plea." *United States v. Hollis,* 718 F.2d 277, 280 (8th Cir.1983) (affirming district court's denial of motion to withdraw guilty plea where defendant relied on psychiatric report that was submitted after plea and before sentencing), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984). Trial courts should consider facts and circumstances such as evidence of irrational behavior, a defendant's demeanor before the trial court, and any available medical evaluations. *Griffin,* 935 F.2d at 930.

In this case, no person present at the 1989 plea proceeding—not the trial judge, not the prosecutor, and not Weisberg's counsel—indicated that Weisberg's competence should be doubted. After reviewing the plea transcript, we see no reason for doubt. Weisberg signed a plea petition prior to the plea proceeding, stated at the plea proceeding that he had discussed the matter with counsel, and answered all questions to the court's satisfaction. When the issue was first raised at the initial sentencing hearing, the state trial court explicitly stated that it did not doubt Weisberg's competence. Even so, it extended an opportunity to Weisberg's counsel to have his client tested and to present evidence on the issue. When the sentencing hearing reconvened and the court called counsel's attention to why it had been continued, Weisberg offered no evidence bearing on his competence. We believe that the facts and circumstances known to the trial court at the time of Weisberg's guilty plea do not raise a "sufficient doubt" that Weisberg was competent to plead guilty. The information contained in the presentence investigation report was not substantial enough to alter the trial court's findings. Thus, the state trial court did not err when it did not conduct a *Drope* hearing.

### b.

▉▉▉ We next consider whether Weisberg's guilty plea was invalid on the ground that, despite the lack of a competency hearing and contemporaneous findings, he actually was incompetent at the time of his plea. The magistrate judge granted relief on this ground, essentially finding that Weisberg's statements during the plea and the evidence introduced during the state-court postconviction proceedings demonstrate that Weisberg was in fact incompetent when he told the court he was guilty of sports bookmaking.

▉▉▉ A defendant is competent if he "has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Godinez,* — U.S. at —, 113 S.Ct. at 2685 (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam)). The magistrate judge relied on several parts of the record to determine that Weisberg was incompetent. He reached his conclusions primarily by analyzing Weisberg's testimony at the plea proceeding. At one point, Weisberg answered the question, "Do you have any children?" with the answer, "Never been married." (Appellant's App. at B42.) The magistrate judge reasoned that this "testimony revealed that he was apparently unaware of the basic biological fact that it is possible

to have children without being married." (Report & Recommendation at 21.) We think it is more likely that Weisberg, like those of his generation, believed that marriage normally precedes fatherhood and that his response, phrased as it was, would sufficiently answer the question. We do not believe that Weisberg's answer to this question tends to prove incompetence. The magistrate judge also questioned Weisberg's testimony that he was educated in "special" schools because he needed to be employed. The magistrate judge said that "in actuality" Weisberg went to special schools because he had been deemed "feebleminded," that Weisberg's answer was a "rationalization," and that Weisberg had a "lack of insight" into the reasons why he went to special schools. (*Id.*) Although the 1939 probate court judgment shows that Weisberg had been deemed "feebleminded," the magistrate judge did not explain, and the record does not reveal, how Weisberg's answer was unresponsive or how it demonstrates incompetence. The magistrate judge also referred to Weisberg's "confused responses" to questions asked of him during the plea proceeding. Only once during the plea proceeding did a questioner feel the need to rephrase a question, and that was upon Weisberg's request; Weisberg asked the prosecutor to clarify whether the prosecutor meant five bets during the entire period charged in the complaint or five bets per day. As we read the transcript, Weisberg demonstrated an admirable desire for precision in the prosecutor's questions. Even if the purported confusion were to be blamed on Weisberg, our experience is that some confusion about a question is not uncommon between a lawyer and an adverse witness and certainly is not convincing evidence of incompetence. Indeed, if Weisberg's testimony during his plea proceeding were as amiss as the magistrate judge characterized it, someone surely would have been alarmed. *See Drope,* 420 U.S. at 176–77, 95 S.Ct. at 906 ("judges must depend to some extent on counsel to bring issues into focus"). Thus, we believe that Weisberg's testimony at the plea proceeding does not tend to prove that he was incompetent.

The magistrate judge also relied on documentary evidence Weisberg introduced in support of his postconviction motion. An October 4, 1939, probate court judgment stated that Weisberg was "feebleminded because of inability to make normal progress in school." (Appellant's App. at B27.) It hardly need be said that this document has negligible relevance to the question whether Weisberg was competent to enter a guilty plea fifty years later on June 19, 1989, after a lifetime of living and working in the city. The magistrate judge also relied on the jury's verdict in the second prosecution that Weisberg was not guilty of the charges contained in the second complaint because of mental deficiency. The weight of this evidence also is weakened by the fact that it followed Weisberg's guilty plea by a significant period of time. *See Dusky,* 362 U.S. at 403, 80 S.Ct. at 789 (noting "difficulties of retrospectively determining the petitioner's competency as of more than a year ago"). Furthermore, the jury's finding does not necessarily mean that Weisberg was incompetent to plead guilty because the two inquiries are governed by different legal standards. *Cf. United States v. Veltman,* 9 F.3d 718, 722 (8th Cir.1993) (holding that person committed for treatment of mental disease or defect was nonetheless competent to waive right to counsel), *cert. denied,* —— U.S. ——, 114 S.Ct. 1572, 128 L.Ed.2d 216 (1994). The magistrate judge also relied on the psychologist's letter, but the psychologist did not conclude that Weisberg was incompetent. In one part of the letter, the psychologist said that Weisberg "does not see why his situation is any different from society's legalized gambling, [ ] does not see why he should be singled out for punishment [but] does recognize that he is regarded as an offender by the law, as has been the case in previous convictions for gambling activities...." (Appellant's App. at B33.) We do not construe this statement to indicate that Weisberg did not have a " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.' " *Godinez,* —— U.S. at ——, 113 S.Ct. at 2687 (quoting *Dusky,* 362 U.S. at 402, 80 S.Ct. at 789). Rather, we believe that this part of the letter more likely indicates that Weisberg simply chose to defy the law because he disagreed with it. This was the view of the state trial

court, which had the advantage of observing Weisberg at the time of the plea. Disagreement, however, does not imply incompetence.

As the petitioner in a habeas action, Weisberg carries the burden of persuasion. *See Kramer v. Kemna,* 21 F.3d 305, 307 (8th Cir.1994). To carry his burden, Weisberg must either overcome the presumption that the state courts' findings of competence are correct, *see* 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770–71, 66 L.Ed.2d 722 (1981), or establish that the state courts' findings of competence are not fairly supported by the record, *see* 28 U.S.C. § 2254(d)(8); *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983); *Williams v. Armontrout,* 912 F.2d 924, 930 (8th Cir.1990) (en banc) (stating that petitioner bears burden of establishing that record does not support state courts' findings), *cert. denied,* 498 U.S. 1127, 111 S.Ct. 1092, 112 L.Ed.2d 1197 (1991), *and* —— U.S. ——, 113 S.Ct. 1613, 123 L.Ed.2d 173 (1993). The magistrate judge determined that the state courts' findings in this case, as evidenced by the Minnesota Court of Appeals' decision, were not supported by the record and thus were not entitled to a presumption of correctness. However, the presumption of correctness "requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair support' in the record." *Lonberger,* 459 U.S. at 432, 103 S.Ct. at 850. Here, the state courts' findings of competence were supported by Weisberg's plea petition, the transcript of Weisberg's testimony at his plea proceeding, the state trial court's on-the-record statements that he did not doubt Weisberg's competence, and the Minnesota Court of Appeals' opinion that the state trial court's denial of Weisberg's postconviction motion was proper. We thus disagree with the magistrate judge's determination that the state courts' findings were not fairly supported by the record.

Retrospective determinations of whether a defendant is competent to stand trial or to plead guilty are strongly disfavored. Such determinations have "inherent difficulties" even "under the most favorable circumstances." *Drope,* 420 U.S. at 183, 95 S.Ct. at 909; *cf. Day,* 949 F.2d at 982 n. 9 ("To require a sentencing court [upon a collateral attack to a prior conviction] to decide whether a defendant was competent during proceedings that took place years earlier would be an exercise in futility."). Weisberg's task was more difficult than usual because he did not testify and because he did not introduce the testimony of any person who could testify that he was incompetent on June 19, 1989. Thus, after carefully reviewing the record, we conclude that Weisberg has failed to prove that he was incompetent when he entered his guilty plea. The district court's ultimate finding on this issue was clearly erroneous.

2.

We next consider whether Weisberg's guilty plea was invalid on the ground that, despite his competence, he did not in fact make a knowing and voluntary plea. To prove that his plea was not a knowing and voluntary plea, Weisberg must show that he did not make "a voluntary and intelligent choice among the alternative courses of action." *Schone v. Purkett,* 15 F.3d 785, 788–89 (8th Cir.1994) (internal quotations omitted).

Weisberg has not presented any evidence that he did not understand the nature of the plea proceeding or that he entered his plea involuntarily. Only the letter from the psychologist, which paraphrases some statements Weisberg made to the psychologist after his plea, bears remotely on this issue. As we have explained above, the letter is ambivalent and thus unpersuasive. The plea and sentencing transcripts contain ample evidence that Weisberg understood the consequences of his guilty plea and that he entered it voluntarily. *See Brown v. Armontrout,* 898 F.2d 84, 87 (8th Cir.) (affirming denial of habeas relief because plea transcript showed that plea was knowing and voluntary), *cert. denied,* 498 U.S. 868, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990).

Furthermore, Weisberg introduced no evidence that his decision to plead guilty was based on and caused by the complaint's fail-

ure to allege the intentional element of the charged offense. Weisberg's case thus differs from *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), where the habeas petitioner "testified that he would not have pleaded guilty if he had known that an intent to cause the death of his victim was an element of the offense," *id.* at 643–44, 96 S.Ct. at 2257, and where the district court also heard the testimony of the two lawyers who had represented him at trial, the prosecutor, and the habeas petitioner's mother, *id.* at 639–40, 96 S.Ct. at 2255.

■ Weisberg also argued to the district court that his plea was invalid because his "plea was entered to save [his brother] from prosecution." (Memo. in Support of Pet. at 10 (citing *United States v. Cammisano*, 599 F.2d 851 (8th Cir.1979)). The interrelationship between Weisberg's case and his brother's case was fully disclosed; Weisberg's plea petition stated, "I have been told by my attorney and understand that ... the prosecuting attorney agreed that if I entered a plea of guilty, ... the case against [my brother] will be dismissed." (Appellant's App. at B51.) Such a condition is not invalid *per se* but is merely one factor a court should consider when determining whether a guilty plea is voluntary. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 604 (1978) (noting that promises of lenient treatment for other defendants "might pose a greater danger of inducing a false guilty plea"). Although Weisberg had stated at the sentencing hearing that he believed the State did not have sufficient evidence to convict his brother, he presented no evidence to support the argument that he felt coerced to plead guilty for this reason. *Cf. Cammisano*, 599 F.2d at 856–57 (reversing denial of motion to withdraw plea because of "the combination of the trial court's noncompliance with [Federal] Rule [of Criminal Procedure] 11, the court's statements made to counsel before the defendant entered his plea and the evidence of familial coercion"). The plea petition, as a whole, appears to represent a good bargain for Weisberg because it also included a provision that the prosecutor would recommend that no jail time and no fine be imposed. (Appellant's App. at B51.) Thus, Weisberg

has failed to prove that his guilty plea was not knowing and voluntary.

In sum, we are satisfied that Weisberg had "the capacity to understand the proceedings and to assist counsel." *Godinez*, —— U.S. at ——, 113 S.Ct. at 2688. Thus, he is not entitled to relief on his first claim because he has not proved that his guilty plea was invalid.

**B.**

■ Weisberg also alleged, "The complaint failed to state essential elements of [the] offense in violation of due process." (Appellant's App. at A6.) Specifically, Weisberg argues that the complaint was insufficient because it said only that he "did wrongfully [and] unlawfully engage in sports bookmaking," (*id.* at B16), and did not include the word "intentionally," as required by the statute creating the offense, *see* Minn.Stat. § 609.75, subd. 7.

■ As a general rule, "[a] defendant's knowing and intelligent guilty plea forecloses 'independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' " *United States v. Vaughan*, 13 F.3d 1186, 1187 (8th Cir.) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973)), *cert. denied*, —— U.S. ——, 114 S.Ct. 1858, 128 L.Ed.2d 481 (U.S.1994) (No. 93–8607). There are exceptions to this rule, however; a person may, despite a valid guilty plea, pursue a certain type of claim that has been variously defined as a claim that attacks "the State's power to bring any indictment at all," *United States v. Broce*, 488 U.S. 563, 575, 109 S.Ct. 757, 765, 102 L.Ed.2d 927 (1989), that protects a defendant's "right not to be haled into court," *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2104, 40 L.Ed.2d 628 (1974), and that "the charge is one which the State may not constitutionally prosecute," *Menna v. New York*, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975) (per curiam). We have often interpreted these Supreme Court cases to foreclose claims that raise "nonjurisdictional" issues and to permit only claims that question the trial court's "jurisdiction."

*See, e.g., Vaughan,* 13 F.3d at 1188 (holding that guilty plea forecloses double jeopardy claim unless breach of prior plea agreement is "apparent 'on the face of the record' "); *United States v. Stewart,* 972 F.2d 216, 217–18 (8th Cir.1992) (holding that guilty plea forecloses Fourth Amendment claim); *Smith v. United States,* 876 F.2d 655, 657 (8th Cir.) (holding that guilty plea forecloses Fourth Amendment claim and self-incrimination claim), *cert. denied,* 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989); *Sodders v. Parratt,* 693 F.2d 811, 812 (8th Cir.1982) (holding that guilty plea does not foreclose attack on constitutionality of criminal statute under which defendant was charged); *Camp v. United States,* 587 F.2d 397, 399 (8th Cir. 1978) (holding that guilty plea forecloses allegation of violation of Interstate Agreement on Detainers); *Perry v. United States,* 576 F.2d 158, 159 (8th Cir.) (holding that attack on "the sufficiency of the indictment was waived by [Perry's] plea of guilty"), *cert. denied,* 439 U.S. 855, 99 S.Ct. 168, 58 L.Ed.2d 162 (1978); *cf. O'Leary v. United States,* 856 F.2d 1142, 1143 (8th Cir.1988) (holding that guilty plea does not foreclose attack on sufficiency of indictment) (citing *United States v. Di Fonzo,* 603 F.2d 1260, 1263 (7th Cir.1979) ("a defendant who has pleaded guilty must show that the words and allegations of the indictment on its face failed to state an offense"), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980)).

We have determined that Weisberg's guilty plea is valid. Thus, Weisberg can assert his second claim, that the criminal complaint was insufficient, only to the extent it challenges the state trial court's jurisdiction. Whether an indictment or criminal complaint is sufficient to confer jurisdiction on a state court is a question of state law. *Gray v. Swenson,* 430 F.2d 9, 14 (8th Cir. 1970); *see also Williams v. Collins,* 16 F.3d 626, 637 (5th Cir.1994); *Hailey v. Dorsey,* 580 F.2d 112, 116 (4th Cir.1978), *cert. denied,* 440 U.S. 937, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979). Thus, a federal habeas court must

either defer to a state-court finding in the underlying case, *see McKay v. Collins,* 12 F.3d 66, 68, *modified on reh'g on other grounds,* 12 F.3d 70 (5th Cir.1994), or apply state law to the underlying case in the first instance, *see id.* at 69.

In Minnesota, a trial court has jurisdiction in a criminal action if a person (1) while within the state, commits an offense; (2) while outside the state, aids or abets the commission of a crime within the state; or (3) while outside the state, intentionally causes a result within the state that is criminal. Minn.Stat. § 609.025; *State v. Smith,* 421 N.W.2d 315, 319 (Minn.1988). In essence, the statute requires a criminal complaint to allege that a defendant is responsible for some criminal event occurring within Minnesota. If so, the trial court has jurisdiction. *See Smith,* 421 N.W.2d at 318–21; *State v. McCormick,* 273 N.W.2d 624, 625–28 (Minn.1978).

Weisberg does not claim that the complaint and its pages of attachments failed to allege criminal conduct, and he does not claim that he is not the person identified in the criminal complaint, and he does not claim that the allegations to which he pled guilty occurred outside of Minnesota. Weisberg simply wishes to take advantage of an alleged technical defect in the complaint, i.e., the lack of the word "intentionally." [1] Such an insufficiency, if proved prior to trial, might have provided a basis for dismissal of the complaint, *see State v. Serstock,* 402 N.W.2d 514, 518–20 (Minn.1987), but it could not have deprived the trial court of the power to preside over a criminal action, *see* Minn.R.Crim.P. 17.06, subd. 4(3) (stating that, following dismissal of complaint, "further prosecution shall not be barred" and court may continue to detain defendant pending filing of new or amended complaint); *Serstock,* 402 N.W.2d at 520. Thus, applying Minnesota law to the present case, we believe that the State had the power to bring an indictment against Weisberg and hale him

---

1. Weisberg was charged as an aider and abetter, which, under Minn.Stat. § 609.05, subd. 1, requires one to "intentionally" aid another. In his plea petition offered to the state trial judge, Weisberg acknowledged that he had been told by his attorney and that he understood that "a person who participates in a crime by *intentionally* aiding" another person is just as guilty as one who actually commits it. (Appellant's App. at B61 (emphasis added).)

into court, and that the state trial court had the power to enter a judgment of conviction, regardless of the alleged insufficiency in the complaint. *See Blackledge,* 417 U.S. at 30, 94 S.Ct. at 2104 (noting that trial court in *Tollett* retained power to bring defendant into court because "even a tainted indictment ... could have been 'cured' ").

More importantly, the Minnesota courts have already reviewed Weisberg's attack on the sufficiency of the complaint and have not determined that jurisdiction was lacking. The alleged deficiency Weisberg identified in his habeas petition is the same alleged deficiency he presented to the state courts. The state trial court denied his postconviction motion, and the trial court's ruling was affirmed on appeal. *See Weisberg,* 473 N.W.2d at 383. We can infer from the Minnesota Court of Appeals' decision that the state trial court had jurisdiction, and we are obligated to adhere to that conclusion. Thus, Weisberg cannot obtain habeas relief on the ground that the complaint failed to state the essential elements of the offense.

In sum, Weisberg is not entitled to relief on his second claim because he has waived all nonjurisdictional claims and cannot prove a jurisdictional claim.

## III.

We conclude that Weisberg has failed to prove that his guilty plea was invalid. We also conclude that Weisberg cannot prove that his conviction should be vacated on the ground that the complaint was insufficient. Thus, we reverse the judgment of the district court. On remand, the district court shall deny the petition.

HEANEY, Senior Circuit Judge, dissenting.

I have no alternative but to dissent. Intent is an essential element of the crime of sports bookmaking, and the State failed to allege in the indictment that Max Weisberg had the necessary intent. The failure to allege intent was more than a "technical de-

fect," as the majority maintains; it went to the very heart of the indictment and deprived Weisberg of due process.

The United States Supreme Court has made it clear that where specific intent is an essential element of a crime that intent must be alleged in the indictment. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). This court has consistently taken the same position. *See United States v. Opsta,* 659 F.2d 848, 850 (8th Cir.1981) (failure to allege essential element of criminal intent renders indictment partially defective and requires dismissal); *United States v. May,* 625 F.2d 186, 190 (8th Cir.1980) (specific intent is a necessary element that must be alleged in the indictment); *United States v. Denmon,* 483 F.2d 1093, 1095 (8th Cir.1973) (indictment must set forth the essential elements of the offense charged or it is fatally defective). The majority seems to agree with this statement of the law, but holds that (1) by pleading guilty, Weisberg waived his right to challenge the validity of the indictment; and (2) in any event, the State of Minnesota had already decided that Weisberg had waived his right to challenge the validity of the conviction and our court is bound by that decision.

If an essential element of the crime has been omitted from the indictment, the omission may be cured if the indictment sets out the words of the statute itself, but only if "those words of themselves fully, directly, and expressly without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.... [An] omission is not cured by a bare citation of the charging statute." *United States v. Zangger,* 848 F.2d 923, 925 (8th Cir.1988) (citations omitted). A "bare citation" to the statute is precisely what we have here.

An objection that an indictment fails to state an essential element of a crime can be raised at any time. *See* Fed.R.Crim.P. 12(b)(2).[1] *See United States v. Wilson,* 884

---

1. Fed.R.Crim.P. 12(b)(2) states:
   (b) Pretrial motions. Any defense, objection, or request which is capable of determina-

tion without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the

F.2d 174, 179 (5th Cir.1989); *United States v. Oberski,* 734 F.2d 1034, 1035 (5th Cir.1984), *cert. denied,* 469 U.S. 1113, 105 S.Ct. 797, 83 L.Ed.2d 790 (1985). While some courts take the position that if the issue is not raised at trial the indictment will be read more liberally, *United States v. Campos–Asencio,* 822 F.2d 506, 508 (5th Cir.1987); *United States v. Pupo,* 841 F.2d 1235, 1239 (4th Cir.), *cert. denied,* 488 U.S. 842, 109 S.Ct. 113, 102 L.Ed.2d 87 (1988), this rule is of no avail to the State in this case because on any reading of the indictment, however liberal, the necessary intent element is nowhere to be found. It follows that Weisberg is entitled to habeas relief unless the majority's alternate ground for affirming (*e.g.,* that we are bound by the state court's decision) has merit. In this regard, constitutional rights and jurisdiction are synonymous. Weisberg had a federal constitutional right to have all essential elements of the crime charged, and he cannot be deprived of that right by a state court.

The Minnesota Supreme Court's view on the necessity of charging intent in an indictment where intent is an essential element of the crime is identical to that of the United States Supreme Court in *Russell* and this court in *Opsta, May,* and *Denmon, see supra.* Chief Judge Amdahl of the Minnesota Supreme Court in the seminal case *State v. Serstock,* made clear that "[t]he indictment must contain the elements of the offense charged," and that failure to do so must result in a dismissal. 402 N.W.2d 514, 518 (Minn.1987); *see also State v. Oman,* 265 Minn. 277, 121 N.W.2d 616, 620 (1963) ("A statement of the essential facts constituting the offense charged is indispensible [sic] to the validity of the indictment."). In no reported case has the court departed from the rules in *Serstock* and *Oman,* nor could it because the issue is one of federal constitutional law.

The Minnesota Court of Appeals in the instant case failed plainly and simply to follow *Serstock* and *Oman,* Minnesota law on the issue. Even if it had done so, the court's decision could not be permitted to stand because the question is one of federal constitutional law. The court based its decision on the fact that "Weisberg acknowledged in extensive questioning before entering his plea that he knew the charges against him and had discussed these with his attorney." *State v. Weisberg,* 473 N.W.2d 381, 383 (Minn.App.1991). While this may be true, it is not a basis for validating an indictment that fails to state the essential elements of an offense. *Opsta,* 659 F.2d at 805; *May,* 625 F.2d at 190; *Denmon,* 483 F.2d at 1095.

With due respect to my colleagues, the cases cited by them fall far short of supporting their position. In *Sodders v. Parratt,* 693 F.2d 811, 812 (8th Cir.1982), this court held that an information cannot be challenged after a plea of guilty *unless* the information fails to charge a crime. The case before us fits squarely into the *Sodders* exception. The indictment, by failing to allege intent, an essential element of the crime of sports betting, failed to allege a crime. In *Perry v. United States,* this court in a per curiam opinion simply restated the rule that a defendant cannot challenge the *sufficiency* of an indictment after entering a plea of guilty in contrast to a defendant's ability to challenge an indictment where the indictment fails to allege an essential element of the offense. 576 F.2d 158, 159 (8th Cir.), *cert. denied,* 439 U.S. 855, 99 S.Ct. 168, 58 L.Ed.2d 162 (1978). We reaffirmed this point in *O'Leary v. United States* when we stated that "[i]n order *to establish a jurisdictional defect, [a defendant] must show that the indictment on its face fails to state an offense.*" 856 F.2d 1142, 1143 (8th Cir.1988). *O'Leary* makes clear that an indictment that on its face fails to state an offense establishes a jurisdictional defect. In this case, we have a jurisdictional defect.

I take issue as well with the majority's application of *Gray v. Swenson,* 430 F.2d 9, 14 (8th Cir.1970), *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir.1994), and *Hailey v.*

---

judge. The following must be raised prior to trial:

. . . .

(2) Defenses and objections based on defects in the indictment or information (*other than*

*that it fails to show jurisdiction in the court* or *to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)....* (Emphasis added).

*Dorsey,* 580 F.2d 112, 116 (4th Cir.1978), *cert. denied,* 440 U.S. 937, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979). These cases simply hold that the *sufficiency* of a state indictment may be grounds on which to base federal habeas relief only when the convicting court is without jurisdiction (*e.g., when the indictment fails to allege the essential elements of the crime* ). The majority can take some comfort in *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir.1994), but even there the court states that "[t]he sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction."

I would affirm the district court's decision to grant the petitioner the writ of habeas corpus.[2]

2.  In light of my view that the indictment in this case is defective, it is not necessary for me to reach the other issues raised by the majority.